**Dr. Karyn MESSINA, Plaintiff,**

**v.**

**Susan FONTANA, et al., Defendants.**

**No. CIV.A. 03CV0011(RMC).**

United States District Court,
District of Columbia.

May 8, 2003.

---

1. The Court held a status conference in this matter on April 14, 2003, at which time it issued a scheduling order.

Sol Z. Rosen, Washington, DC, for Plaintiff.

## MEMORANDUM OPINION

COLLYER, District Judge.

Dr. Karyn Messina, an equal business partner with Susan Fontana in a business venture known as Totally Italian.com, Inc., has sued Ms. Fontana and her attorney, Daniel S. Krakower, as well as Mr. Krakower's law firm, Shulman, Rogers, Gandal, Prody & Ecker, P.A. ("Firm"). Dr. Messina claims that Ms. Fontana and Mr. Krakower have defamed her through a December 27, 2002 email authored by Ms. Fontana and by a letter sent by Mr. Krakower to Dr. Messina. Mr. Krakower is alleged to be an agent of the Firm. The complaint alleges that "[t]he words used in correspondence by the defendants constitute libel *per se* in that they are designed to imputing [sic] unfitness to perform and/or the lack of integrity in the performance of the duties of the job that she [sic] was designated to perform for the business enterprise." Complaint ¶ 5.

Pending before the Court are motions to dismiss and/or for summary judgment filed by Mr. Krakower and the Firm ("Lawyers' Motion") and by Ms. Fontana ("Fontana Motion").[1] For the reasons detailed below, the Lawyers' Motion for summary judgment will be granted. The Fontana Motion will be denied. Dr. Messina's Motion to Strike will be denied. The Lawyers Motion for Fees Under Rule 11 will be denied.

## Background Facts

Dr. Messina and Ms. Fontana are equal owners of Totally Italian.com, Inc., a Delaware corporation.[2] They hold the positions of co-presidents. Certain disputes arose between the owners as to the management of the corporation. Ms. Fontana retained the services of the Firm and Mr. Krakower to advise her. She also contacted Mr. Chaim Kalfon "to resolve the dispute and assist Law Firm." Lawyers' Reply at 2, n. 2; *see also* Messina Opposition at List of Exhibits (Mr. Kalfon was "Ms. Fontana's proposed mediator for Totally Italian.com, Inc. business matters."). Mr. Krakower wrote to Dr. Messina, identifying some of Ms. Fontana's concerns and suggesting that the parties engage in a process to value the business and let one buy the other out ("Krakower Letter"). Mr. Krakower sent his letter to Dr. Messina by way of Federal Express on December 31, 2002. The complaint alleges that the Krakower Letter accused Dr. Messina of mismanagement of the business and that it constituted slander *per se.* Complaint ¶¶ 4, 5.[3]

---

1. A slew of other filings are pending. The Lawyers' Motion was filed January 31, 2003, accompanied by a motion for an oral argument; the Fontana Motion was filed on the same date; an Opposition to Motions to Dismiss Complaint was filed by Dr. Messina on February 10, 2003 ("Messina Opposition"); Ms. Fontana filed a Reply ("Fontana Reply") on February 20 and the Lawyers' Reply was filed February 24, 2003; the Lawyers filed a Motion for Fees Under Rule 11 ("Lawyers' Fee Motion") on February 27, which was opposed by Dr. Messina on March 11 ("Messina Fee Opposition"); Dr. Messina filed a Motion to Strike Pleadings and Other Relief, addressing personal jurisdiction over Ms. Fontana, on March 11, 2003 ("Messina Motion to Strike") and also filed a Sur–Reply to Reply to Opposition to Motion to Dismiss Complaint on March 11, 2003 ("Messina Sur–Reply"); the Lawyers filed a Reply to Opposition to Motion for Sanctions, Attorney's Fees and Costs ("Lawyers' Fee Reply") on March 19, 2003 and a Response to Sur–Reply to Reply to Opposition to Motion to Dismiss Complaint ("Lawyers' Response to Sur–Reply") on March 20, 2003; Dr. Messina then filed Additional Points and Authorities in Support of Opposition to Motion to Dismiss and for Sanctions and Legal Fees ("Messina Additional Points") on April 1, 2003; and Ms. Fontana filed Defendant Fontana's Opposition to Motion to Strike Pleadings and Other Relief ("Fontana Opposition to Strike") on April 4, 2003. At the request of the Court, the Lawyers filed a Response to Messina Additional Points on April 8, 2003 ("Lawyers' Response to Additional Points").

2. The facts are taken from the statement of facts in the Lawyers' Motion insofar as there is no dispute on those facts from Dr. Messina.

3. Specifically, ¶ 4 of the complaint states:

   The defendant Krakower, as an agent of the law firm Shulman, Rogers, Gandal, Pordy and Ecker, and acting as their agent and on behalf of the law firm defendant, sent and published to the plaintiff in the District of Columbia a letter which accused her of the mismanagement of the business enterprise and of professional misconduct. The plaintiff is a licensed psychologist. The same was published to the plaintiff, her husband, her daughter and others who received the same from the defendant Fontana and/or Krakower. At all times herein the three defendants knew that the allegations of the correspondence that were published to the plaintiff, her family and other third parties, whose identity is known to the defendants, were false. They were published with the knowledge that they were false. They were published with malice and with the intent to portray the plaintiff

Ms. Fontana is also alleged to have defamed Dr. Messina.[4] The complaint states:

On December 27, 2002, the defendant Fontana sent an email to the defendant Krakower that was published in the District of Columbia and elsewhere which accused the plaintiff of mismanagement of the business and deceptive practices to the detriment of the defendant Fontana. She accused the plaintiff of falsely engaging in practices that were detrimental to the business enterprise. The same was published to the plaintiff, her husband and daughter as well as to others who are [on] her computer lists for receiving documents. The identities of these individuals are known to the defendant Fontana.

Complaint ¶ 3.

Rather than answer Mr. Krakower's letter, Dr. Messina filed this lawsuit seeking ten million dollars in damages.

### Legal Standards

Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not a "disfavored legal short-cut[;]" rather, it is a reasoned and careful way to resolve cases fairly and expeditiously. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994). Any factual dispute must be capable of affecting the substantive outcome of the case to be "material" and "genuine." *See Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *Laningham v. United States Navy*, 813 F.2d 1236, 1242–43 (D.C.Cir.1987).

■ The Court applies the law of the District of Columbia in analyzing this case because Dr. Messina lives and works in the District of Columbia and alleges that she was injured there. *See Weyrich v. The New Republic, Inc.*, 235 F.3d 617, 623 (D.C.Cir.2001) (D.C. uses the governmental interest test in considering choice of law issues for defamation). Under local law, to establish a cause of action for libel, a plaintiff must show: (i) a false and defamatory statement was written by the defendant about the plaintiff; (ii) the defendant published it without privilege to a

---

in a false light and humiliate her in the eyes of third persons who read the correspondence from the defendant. They were published with the intent to damage the reputation of the plaintiff as a businesswoman and as a professional psychologist.

**4.** The Messina Opposition, although not the complaint, identifies nine alleged third-party publications of defamatory material about Dr. Messina. On December 11, 17, and 24, 2002, Ms. Fontana is alleged to have forwarded or copied to Mr. Kalfon information that she sent to Mr. Krakower. She is alleged to have forwarded the draft version of the Krakower Letter and her comments on it on December 28, as well as the final Krakower Letter on January 2, 2003, to Jay Veach, a close personal friend with whom Dr. and Mr. Messina had had business dealings. She allegedly sent a copy of the Krakower Letter on January 2, 2003, to Joe Fontana, the owner of a major printing company with which Totally Italian.com, Inc., has done business. And she is alleged to have sent an email to Cindy Peale, a friend in Florida who might have become a Florida affiliate of Totally Italian.com, Inc., on January 7, 2003. In this email, Ms. Fontana is alleged to have stated, "I do hope that this comes to a resolution out of court. My guess is that she will not want to mess with her profession."

third party; (iii) the defendant exhibited some fault in publishing the statement; and (iv) the statement is actionable as a matter of law or the publication has caused the plaintiff special harm. *Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001); *Klayman v. Segal*, 783 A.2d 607, 612 n. 4 (D.C.2001).

## Analysis

### A. *Specificity of the Complaint*

▉ The Firm and Mr. Krakower ("Lawyers") and Ms. Fontana urge the Court to dismiss the complaint for lack of specificity. However, heightened pleading standards do not apply in defamation actions. *See Croixland Props. Ltd. P'ship v. Corcoran*, 174 F.3d 213, 215 n. 2 (D.C.Cir. 1999) (a defamation complaint "must allege the elements of the cause of action; the Federal Rules of Civil Procedure impose no special pleading requirements for defamation as they do for a specified list of other matters. *See, e.g.*, FED. R. CIV. P. 9.") (D.C.Cir.1999). The Court concludes the complaint in this matter satisfies the requirements of notice pleading as it alleges the elements of a cause of action for libel. It alleged that Mr. Krakower "sent and published ... a letter" that accused Dr. Messina "of the mismanagement of the business enterprise and of professional misconduct" and was libelous *per se*. The complaint alleged publication to Dr. Messina, her husband, her daughter and unknown "others." It claimed that the Law-

yers knew the statements were false and that the Lawyers published the statements with malice. Similarly, the allegations against Ms. Fontana identified the communication that allegedly defamed Dr. Messina (email dated December 27, 2002, to Mr. Krakower), the nature of the defamation as libelous *per se* (false statements regarding mismanagement, deceptive practices), and publication.[5]

### B. *Lawyers' Immunity*

▉ The Lawyers correctly argue that the Krakower Letter is subject to the judicial proceedings privilege and that the complaint allegations as to the Firm and Mr. Krakower are subject to dismissal. The privilege in question is not the attorney/client privilege, which can be lost by disclosure to a third party such as Mr. Kalfon. The judicial proceedings privilege applies to lawyer statements that are allegedly defamatory when the statements are made preliminary to a judicial proceeding and so long as the statement bears some relation to that proceeding. *Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.*, 774 A.2d 332, 338 (2001). The Second Restatement of Torts explains that:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or dur-

---

**5.** Even if a heightened pleading standard is applied, *see Black v. National Football League Players Assoc.*, 87 F.Supp.2d 1 (D.D.C.2000); *Hoffman v. Hill & Knowlton, Inc.*, 777 F.Supp. 1003, 1005 (D.D.C.1991), the Court finds that the complaint is sufficiently specific so as to withstand the motions to dismiss. Although the Krakower Letter was not attached to the complaint, ¶ 4 notified the defendant Lawyers that Dr. Messina's action is premised on the Krakower Letter, identified the nature of the alleged defamation, listed at

least some of the persons to whom it was allegedly published without privilege, and ¶ 5 alleged that the letter was libelous *per se*. Likewise, even though the December 27, 2002 email was not attached to the complaint, ¶ 3 notified Ms. Fontana that the action is premised on this email, identified the nature of the alleged defamation, listed at least some of the persons to whom it was allegedly published without privilege, and ¶ 5 alleged that the email was libelous *per se*.

ing the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

RESTATEMENT (SECOND) OF TORTS § 586 (1977). Contrary to Dr. Messina's arguments, the Krakower Letter fits both of these criteria. It was "preliminary to a judicial proceeding," in that it was sent for the very purpose of attempting settlement prior to litigation. An "actual outbreak of hostilities" is not required for the judicial proceedings privilege to attach. *Finkelstein*, 774 A.2d at 343. Statements made in settlement efforts prior to trial are covered by the judicial proceedings privilege. *See Brown v. Collins*, 402 F.2d 209, 214 (D.C.Cir.1968); *see also Conservative Club of Washington v. Finkelstein*, 738 F.Supp. 6, 14 (D.D.C.1990) ("The fact that the statements were made prior to the filing of an action ... does not ... defeat the privilege .... [T]he statements were made in contemplation of litigation to the very individuals who would have an interest in the outcome of such litigation."). The Krakower Letter contained a variety of statements that indicated that it was "preliminary to a judicial proceeding" and the fact that no lawsuit has yet been filed by Ms. Fontana against Dr. Messina does not rob the letter of that character. For instance, the letter stated that the proposed buy-out process would result in a "win/win scenario, as compared to the inevitable lose/lose scenario that would result if ... [Ms. Fontana] was forced to commence legal proceedings;" without an amicable settlement, Ms. Fontana "must consider taking appropriate legal action to protect her interest in the Corporation;" and "This Letter is for settlement purposes only, is without prejudice to any rights, remedies

or defenses that [Ms. Fontana] may have, and is inadmissible in any legal proceeding." [6]

Dr. Messina argues that the Krakower Letter did not bear "some relation" to contemplated litigation and therefore is not privileged. The quotes above undercut that argument, as does Dr. Messina's own admission that the Krakower Letter "showed that there was a disagreement over the management of the business between the plaintiff and Fontana," Messina Opposition at 6, and that the letter "talk[s] about disputes." Messina Opposition at 7. The relation test is very liberally construed; as long as the alleged defamatory statement "has some reference to the subject matter of the proposed or pending litigation" it falls within the privilege. RESTATEMENT (SECOND) OF TORTS § 586, comment c; *see also Mohler v. Houston*, 356 A.2d 646, 647 (D.C.1976).

In the Messina Sur–Reply, Dr. Messina argues that Mr. Krakower's publication of the Krakower Letter to Mr. Kalfon (by way of a copy of an email sent to Ms. Fontana) robs the communication of any privilege and demonstrates bad faith. This argument mis-perceives the scope of the judicial proceedings privilege. Dr. Messina herself identified Mr. Kalfon as "Ms. Fontana's proposed mediator for Totally Italian.com, Inc. business matters." Messina Opposition at Exh. 1. The judicial proceedings privilege applies to statements published to persons having an interest in or connection to the litigation. *Finkelstein*, 774 A.2d at 342. By Dr. Messina's own description, Mr. Kalfon was a person with such an interest or connection. *See* RESTATEMENT (SECOND) TORTS § 586.

---

6. Given its resolution of this matter, which does not address the merits of the alleged defamation, the Court sees no need to quote allegedly defamatory material from the Krakower Letter.

■ The motive of the Lawyers in drafting and sending the Krakower Letter does not affect this analysis, contrary to Dr. Messina's argument. Messina Opposition at 7 ("Krakower letter reveals the bad faith of the parties and the fact that the motive of the Defendants was to embarrass the Plaintiff and intimidate her into accepting a settlement of Fontana's claim to her detriment."). The judicial proceedings privilege affords absolute protection, without regard to the attorney's motives, for comments made preliminary to a judicial proceeding and related to it. *Finkelstein*, 774 A.2d at 339; *Arneja v. Gildar*, 541 A.2d 621, 624 (D.C.1988); Restatement (Second) of Torts § 586, comment a (judicial proceedings privilege "protects the attorney from liability in an action for defamation irrespective of his purpose in publishing the defamatory matter"). This lawsuit shows the reason behind the privilege. The Krakower Letter is a straightforward, although strong and direct, letter from counsel alerting the recipient of a potential legal claim and seeking to resolve the claim short of litigation. Private and amicable resolution of disputes is to be encouraged, not discouraged, as would happen if every lawyer's letter could provoke a defamation suit.

## C. *Personal Jurisdiction Over Ms. Fontana*

Ms. Fontana moves to dismiss the complaint against herself on the basis that this Court does not have personal jurisdiction over her. Dr. Messina argues that Ms. Fontana "engages in business in the District of Columbia on a regular and systematic basis" and that she "committed a tort in the District of Columbia by the dissemination of defamatory materials against the plaintiff in the District of Columbia." Messina Opposition at 3. The Messina Motion to Strike would strike Ms. Fontana's

defense because Ms. Fontana engaged in business in the District of Columbia.

Dr. Messina confuses the Court's jurisdiction over Ms. Fontana as an official of Totally Italian.com, Inc., and as an individual. This lawsuit advances claims that Ms. Fontana personally defamed Dr. Messina. It does not sue Totally Italian.com, Inc., or allege that Ms. Fontana defamed Dr. Messina in Ms. Fontana's role as co-president of the corporation. Therefore, the issue is whether Ms. Fontana has sufficient connections with the District of Columbia for the Court to have personal jurisdiction over her.

The Court cannot determine the jurisdictional issue on the record presented. Ms. Fontana avers that she owns no property in the District of Columbia, has no bank account here, does not solicit business in the District of Columbia, or derive substantial revenue in this locale. Fontana Motion at 13. Dr. Messina counters Ms. Fontana's affidavit with her own sworn statement that Ms. Fontana intended the initial target market of Totally Italian.com, Inc. to be Washington, D.C.; that Ms. Fontana established an account with *The Washington Post* for classified advertising on behalf of the corporation; that Ms. Fontana placed advertisements in *Washington Women* magazine on behalf of the corporation; that Ms. Fontana placed advertisements in *Washington Parent* magazine; and that Ms. Fontana prepared additional advertisements. Messina Opposition at Exh. 2, pp. 2–3.

Section 13–423 of the D.C.Code provides that personal jurisdiction under the long-arm statute of the District of Columbia exists when a person

(3) caus[es] tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) caus[es] tortious injury in the District of Columbia by an act or omission

outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia ...

D.C. CODE § 13–423(a). Clearly, since the act of writing the alleged email(s) occurred outside the District of Columbia, Ms. Fontana committed no acts within the District of Columbia provoking injury to Dr. Messina within the District, and personal jurisdiction cannot be premised on § 13–423(a)(3). *See McFarlane v. Esquire Magazine*, Civ. No. 92–0711 TAF, 1994 WL 510088 (D.D.C.1994), *affirmed*, 74 F.3d 1296 (C.A.D.C.1996), *citing Akbar v. New York Magazine Co.*, 490 F.Supp. 60, 63 (D.D.C.1980); *see also Moncrief v. Lexington Herald–Leader Co.*, 807 F.2d 217, 220 (D.C.Cir.1986). Therefore, jurisdiction must be premised on Section 13–423(a)(4), if it exists.

Given Ms. Fontana's clear affidavits and Dr. Messina's countering affidavit as to whether Ms. Fontana "regularly does or solicits business [or] engages in any other persistent course of conduct" sufficient to come under the District's long-arm statute for jurisdictional purposes, the Court finds that the matter is not free from doubt and jurisdictional discovery is needed before it can be determined. Dr. Messina asserts that Ms. Fontana has other contacts in the District of Columbia that are unrelated to the claim at issue in this case; what cannot

be discerned on this record is whether those contacts are "at least [ ]continuing in character." *Security Bank v. Tauber*, 347 F.Supp. 511, 515 (D.D.C.1972).

### D. *Motion for Fees Under Rule 11*

■ The Lawyers have moved, under Rule 11 of the Federal Rules of Civil Procedure, for payment of their fees incurred in defending against this suit.[7] Counsel for Dr. Messina vigorously objects. The Lawyers argue that their communications were absolutely privileged under the judicial proceedings privilege, that this privilege has been unequivocally recognized in the District of Columbia, that it is clear that Dr. Messina's counsel never made a reasonable inquiry into the viability of the claim against the Lawyers, and that the lawsuit was motivated by a desire to intimidate and harass Ms. Fontana to deprive her of her preferred counsel and to deter her from seeking judicial redress on the underlying business dispute. Counsel for Dr. Messina spends many pages attempting, and failing, to distinguish the leading cases in this jurisdiction which recognize this absolute privilege. Dr. Messina's counsel repeatedly argues that the Krakower Letter was not a statement preliminary to litigation and therefore was not privileged, and further states that the Lawyers could have simply written a one or two-paragraph letter asking for a meeting, that the applicability of the privilege is not automatic but must be evaluated on a case by case approach and that his analy-

7. By presenting to the court ... a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -

　(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; ... [and]

　(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

FED. R. CIV. P. 11(b)(1) & (2),

sis of pertinent case law supports his complaint on the merits so that it is not frivolous or brought in bad faith. Even a cursory reading of the Krakower Letter clearly reveals that it was, without doubt, preliminary to litigation. Moreover, this Court will not dictate to attorneys attempting to settle disputes short of litigation that they not lay out the allegations underlying an anticipated suit lest they be slapped with a defamation suit.

However, the motion for sanctions and fees will be denied. Even if counsel for Dr. Messina had fully appreciated the nature of the judicial proceedings privilege at the beginning of this lawsuit, a fact of some doubt since her first pleadings argued the scope of attorney-client privilege, it cannot be said that her complaint against Mr. Krakower was frivolous *ab initio*. The inclusion of Mr. Kalfon as a recipient copied on emails addressed to Ms. Fontana raised at least some question of whether the judicial proceedings privilege would apply in this instance. The Court has found against Dr. Messina on that issue, relying in some measure on her own description of Mr. Kalfon's role in this drama. Being on the losing side, however, does not mean that sanctions are appropriate.

### Conclusion

Mr. Krakower and the Firm of Shulman, Rogers, Gandal, Pordy & Ecker, P.A., are protected from this suit by the absolute privilege of the judicial proceedings privilege. This case is a perfect example of why the privilege exists. The complaint against these parties will be **DISMISSED**.

On the record presented, the Court cannot determine with sufficient clarity the contacts Ms. Fontana may have with the District of Columbia. Her motion to dismiss is **DENIED** and the parties are directed to engage in jurisdictional discovery. A hearing for scheduling the juris-

dictional discovery will be ordered at this first available opportunity.

All other pending motions are **DENIED** on the merits, as described above, or as moot.

**SO ORDERED.**