Pamela GINSBERG, Appellant,

v.

Vilma GRANADOS, et al., Appellees.

No. 07–CV–519.

District of Columbia Court of Appeals.

Argued Oct. 16, 2008.

Decided Jan. 15, 2009.

on materials outside of the record, (4) the Federal Youth Corrections Act ("FYCA") created "privity" between the parties, and (5) appellees breached a duty owed to her under the FYCA. Because Ginsberg's claim is wholly and clearly without any merit on several different grounds and because we are satisfied that the trial court could fairly conclude it was designed to harass appellees, we disagree and affirm.

## I.

On April 26, 2004, Granados' counsel filed a complaint ("Granados Complaint") alleging that Ginsberg, a supervisor at Brookville Supermarket, sexually harassed and engaged in abusive behavior toward Granados. The Granados Complaint also alleged that Brookville Supermarket negligently retained Ginsberg. During Ginsberg's deposition in the *Granados* litigation, appellees confronted her with a criminal conviction for carrying a dangerous weapon (CDW Gun) based on a guilty plea entered on June 15, 1984. On July 27, 2005, Ginsberg, through her counsel, Sol Z. Rosen, Esq., filed a complaint ("Ginsberg Complaint") asserting that Ginsberg's criminal conviction presented at the deposition had been set aside under the FYCA[1] and alleging that appellees illegally acquired and discussed Ginsberg's criminal record during her deposition. The Ginsberg Complaint contended that because Ginsberg's conviction had been set aside under the FYCA, use of the conviction constituted negligence *per se.*

 Granados and her counsel filed a Motion to Dismiss the Ginsberg Complaint pursuant to Super. Ct. Civ. R. 12(b)(6) on

Sol Z. Rosen, Washington, DC, for appellant.

Debra L. Soltis, with whom Paul Y. Kiyonaga, Washington, DC, was on the brief, for appellees.

Before FISHER, Associate Judge, and KING and TERRY, Senior Judges.

KING, Senior Judge:

Pamela Ginsberg appeals the trial court's award of attorneys' fees to appellees, Vilma Granados and her counsel, Paul Kiyonaga, Esq., Debra Soltis, Esq., and Kiyonaga & Soltis, P.C., made after the dismissal of a civil complaint filed against them on behalf of Ginsberg. The trial court held that the complaint claiming appellees acted negligently by acquiring and discussing Ginsberg's publicly available criminal record was "made without color, in bad faith, and for the purpose of harassing counsel." Ginsberg argues on appeal that (1) there was insufficient evidence to sustain the trial court's finding that she filed the lawsuit vexatiously and in bad faith, (2) the judicial proceedings privilege does not provide absolute immunity in this case, (3) the trial court improperly relied

---

1. Appellees do not challenge the claim that Ginsberg's CDW (Gun) conviction was set aside pursuant to the FYCA; however, it is undisputed that the Superior Court records, when appellees obtained them, did not refer to a FYCA sentence or any set aside of Ginsberg's conviction. Nor does Ginsberg claim that appellees had actual knowledge that the conviction had been set aside.

August 17, 2005. On January 18, 2006, the trial court granted that motion,[2] and on January 30, 2006, appellees filed a Motion for Attorneys' Fees pursuant to Super. Ct. Civ. R. 54(d)(2)(B), claiming they were entitled to a fee award based on the bad-faith exception to the "American Rule." On November 20, 2006, the trial court awarded attorneys' fees in the amount of $2,484.37 to Granados, concluding that the Ginsberg Complaint was initiated in bad faith under the standard set forth in *Jung v. Jung*, 844 A.2d 1099, 1107 (D.C.2004) ("The bad faith exception to the American rule allows a court to award attorneys' fees to the prevailing party if the defeated opponent acted in bad faith, vexatiously, wantonly, or for oppressive reasons.").

## II.

 A finding of bad faith[3] is based on "whether the claim is entirely without merit and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." *Cathedral Ave.*

*Coop., Inc. v. Carter*, 947 A.2d 1143, 1160 (D.C.2008) (internal citations and quotation marks omitted); *see also Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1375 (6th Cir.1987) (noting that "findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment" support a finding of bad faith). This court will review a finding of bad faith under the clearly erroneous standard, "and the decision to award fees will be reversed only for abuse of discretion." *Fischer v. Estate of Flax*, 816 A.2d 1, 12 (D.C.2003) (quoting *Goffe v. Pickard*, 588 A.2d 265, 271 (D.C.1991)). This court's review is "therefore confined to a determination of whether the [trial court] failed to consider a relevant factor, whether [it] relied upon an improper factor, and whether the reasons given reasonably support the conclusion." *Jung, supra*, 844 A.2d at 1109 (brackets in original; internal citation and quotation marks omitted).[4]

---

**2.** Ginsberg filed a notice of appeal on January 23, 2006; however, on January 29, 2006, Ginsberg moved this court to dismiss the appeal, which this court granted on February 27, 2006.

**3.** We note at the outset that appellees made no attempt to obtain sanctions under Super. Ct. Civ. R. 11. A litigant must file a Rule 11 motion before termination of the case. *Goldberg. Marchesano. Kohlman. Inc. v. Old Republic Sur. Co.*, 727 A.2d 858, 863 (D.C. 1999) (holding that a litigant must file a motion for sanctions under Rule 11 while the opposing party has an opportunity to cure under the safe harbor provision contained in Rule 11(c)(1)(A)). Because appellees filed their Motion for Attorneys' Fees after the trial court dismissed the Ginsberg Complaint, appellees could not obtain relief under Rule 11.

"Rule 11 imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (analyzing the analogous Federal Rule of Civil Procedure). Thus, the standard for awarding attorneys' fees under Rule 11 is less rigorous than the bad-faith standard. *6921 Georgia Ave., N.W., Ltd. v. Universal Cmty. Dev., LLC*, 954 A.2d 967, 973 (D.C.2008). Although courts will ordinarily rely on their inherent power to impose sanctions where conduct cannot be sanctioned adequately under court rules, courts are not "forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under [rules]." *Chambers, supra*, 501 U.S. at 50, 111 S.Ct. 2123; *see In re Estate of Delaney*, 819 A.2d 968, 998 (D.C.2003) ("[W]hile a court's rules may reach only specified conduct, the court's inherent power fills the gaps.") (internal citation omitted).

**4.** In reviewing sanctions under the bad-faith standard, interpretations of that standard by courts from other jurisdictions will help inform our analysis. *See, e.g., Breezevale Ltd. v. Dickinson*, 879 A.2d 957, 967 (D.C.2005); *Estate of Delaney, supra* note 3, 819 A.2d at 998; *Synanon Found., Inc. v. Bernstein*, 517 A.2d 28, 38–39 (D.C.1986).

 "The mere fact the plaintiff did not prevail before the [trial] court does not necessarily imply that its conduct was 'vexatious' or 'wanton.'" *Autorama Corp. v. Stewart,* 802 F.2d 1284, 1288 (10th Cir. 1986); *see also 6921 Georgia Ave., supra* note 3, 954 A.2d at 972 (noting that an award of attorneys' fees under the bad-faith standard requires a showing of "extraordinary conduct which erodes the fairness of the judicial process.") (internal citation omitted); *Estate of Delaney, supra* note 3, 819 A.2d at 998 (holding that "a party is not to be penalized for maintaining an aggressive litigation posture, nor are good faith assertions of colorable claims or defenses to be discouraged.") (internal citation omitted). A court nonetheless may infer bad faith in circumstances where "an attorney ... brings an action that a competent attorney could not under any conceivable justification reasonably believe not frivolous." *Braley v. Campbell,* 832 F.2d 1504, 1512 (10th Cir. 1987) (internal citation omitted); *see also Synanon Found., supra* note 4, 517 A.2d at 40 ("A claim is colorable, for the purpose of the bad faith exception, when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim.") (quoting *Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir.1980) (per curiam)).

### III.

We begin our analysis by examining the merits of the claim in the complaint and conclude that the claim is without merit on at least three separate grounds. First, contrary to Ginsberg's assertions in the trial court and before us, the FYCA creates no duties on opposing counsel; second, the judicial proceedings privilege, which barred the claim in Ginsberg's complaint, clearly applies, and counsel for Ginsberg was fully aware of the existence and applicability of that privilege in these circumstances; and third, an action for

negligence does not lie where, as here, appellees owed no duty to Ginsberg. Because the complaint could have been dismissed for any of these reasons, we conclude that in filing this complaint Ginsberg "was acting far outside the bounds of the law." *Chevalier v. Moon,* 576 A.2d 722, 724 (D.C.1990) (affirming the trial court's finding of bad faith); *see Gen. Fed'n of Women's Clubs v. Iron Gate Inn, Inc.,* 537 A.2d 1123, 1129 (D.C.1988) ("It is difficult to imagine a case in which a claim wholly without color could be asserted without an improper motive."); *see also ITT Indus. Credit Co. v. Durango Crushers, Inc.,* 832 F.2d 307, 308 (4th Cir.1987) ("[T]he district court did not err in awarding attorney's fees ... because [litigants'] removal petition was so patently without merit that the 'inescapable conclusion' is that it was filed in bad faith."). In short, we are satisfied that no "competent attorney could ... under any conceivable justification reasonably believe [the complaint filed here was] not frivolous." *Braley, supra,* 832 F.2d at 1512.

### A

#### 1. The FYCA Creates No Duty on Opposing Counsel.

 We start with the claim that the FYCA imposes a duty upon appellees. It is not disputed that the public record in the Superior Court of Ginsberg's conviction, at the time appellees obtained the information about the conviction, made no mention of a FYCA sentence, much less anything related to a set aside of the conviction. That record showed only that Ginsberg entered a plea of guilty on June 15, 1984, to a charge of CDW Gun and that a *nolle prosequi* was entered on other related charges. Ginsberg argues that appellees violated the FYCA when they obtained the conviction record and discussed

it during a deposition in the *Granados* litigation. We disagree.

The FYCA states in relevant part,

(a) Upon the unconditional discharge by the [U.S. Parole] Commission of a committed youth offender before the expiration of the maximum sentence imposed upon him, the conviction shall be automatically set aside and the Commission shall issue to the youth offender a certificate to that effect.

(b) Where a youth offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youth offender from probation prior to the expiration of the maximum period of probation theretofore affixed by the court, which discharge shall automatically set aside the conviction, and the court shall issue to the youth offender a certificate to that effect.

18 U.S.C. § 5021(a)-(b) (1982) (repealed 1984). Nowhere does the language of the FYCA create or purport to create duties on the part of opposing counsel in circumstances such as those presented here. Rather, the FYCA addresses only the conduct and responsibilities of the U.S. Parole Commission or a court in setting aside youth offender conviction records.

To be sure, Ginsberg is correct in noting that this court has held that the FYCA mandates the setting aside of a youth of-

fender's conviction in certain circumstances. *See Lindsay v. United States*, 520 A.2d 1059, 1063 (D.C.1987) ("It is true that the set aside has sweeping effect in expunging the conviction from records available to the public, as well as removing legal disabilities created by the conviction."). Nevertheless, the statute creates no duties on the part of opposing counsel.[5] *See United States v. Doe*, 235 U.S.App. D.C. 99, 101, 730 F.2d 1529, 1531 (1984) (holding that *a court* must remove from the public domain records of a conviction set aside under the FYCA); *Doe v. Webster*, 196 U.S.App.D.C. 319, 337, 606 F.2d 1226, 1244 (1979) (holding that once a district court issues an order setting aside a youth offender's conviction, the *Federal Bureau of Investigation* must not disseminate the conviction record to the general public). Therefore, Ginsberg's argument that the FYCA imposed a duty on appellees is wholly unsupported by the plain language of the statute and relevant case law. *See Gen. Fed'n of Women's Clubs, supra*, 537 A.2d at 1128–29 (upholding a trial court's finding of bad faith where the litigant's contempt motion "was without color because it lacked, from the outset, the required factual and legal support.").

Finally, we note that Congress repealed the FYCA in 1984,[6] some twenty years before appellees obtained Ginsberg's publicly available criminal record. We think it

---

**5.** At oral argument, Ginsberg's counsel contended that opposing counsel had a duty to inquire whether an individual's conviction has been set aside under the FYCA if that person was a "youth" when convicted and the conviction occurred before Congress repealed the statute in 1984. We reject that contention because the FYCA creates no duty on opposing counsel and Ginsberg has cited no other basis for imposing such a duty.

**6.** The FYCA, enacted in 1950, provided an alternative sentencing scheme for youth offenders under twenty-two years of age in the federal courts and the local trial court in the

District of Columbia. 18 U.S.C. §§ 5005–5026 (1982); *see Doe v. Webster, supra*, 196 U.S.App.D.C. at 327–29, 606 F.2d at 1234–36. Congress repealed the statute in 1984. Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 218(a)(8), 98 Stat. 1837, 2027 (codified as amended in scattered sections of 18 U.S.C.). Thereafter, the Council of the District of Columbia enacted the Youth Rehabilitation Act, which applied to the sentencing of youth offenders in the District of Columbia Superior Court. D.C.Code §§ 24–901 to –907 (2001 & Supp.2008) (originally enacted 1985).

is wildly implausible to expect that an attorney, who has obtained a publicly available court record of a criminal case that makes no reference to the sentence received in that case, where the sentence might have been imposed pursuant to a statute that Congress repealed twenty years earlier, was somehow on notice that such a sentence was in fact imposed under that statute and that the conviction had thereafter been set aside.

## 2. The Judicial Proceedings Privilege Bars this Action.

 The trial court ruled that the Ginsberg Complaint was entirely without color because the judicial proceedings privilege barred Ginsberg's claim against opposing counsel. Relying on *Savings Bank v. Ward,* 100 U.S. 195, 25 L.Ed. 621 (1879), *Morowitz v. Marvel,* 423 A.2d 196 (D.C. 1980), and *Conservative Club of Washington v. Finkelstein,* 738 F.Supp. 6 (D.D.C. 1990), the trial court held that the absence of privity of contract precludes suits by a party against opposing counsel. In addition, the trial court concluded that the Ginsberg Complaint constituted vexatious and improper litigation because of clear District of Columbia precedent holding that the judicial proceedings privilege is absolute and applies to all statements made to persons with an interest in or connection to a case made preliminary to a judicial proceeding and related to the proceeding.

Ginsberg argues, however, that contrary to the trial court's ruling the judicial proceedings privilege does not provide absolute immunity where a statute such as the FYCA prohibits dissemination or distribution of records. Ginsberg provides no support whatsoever for the proposition that the "absolute" judicial proceedings privilege is subject to limitation in situations involving set-aside convictions under the FYCA. *See generally Finkelstein, Thompson & Loughran v. Hemispherx*

*Biopharma, Inc.,* 774 A.2d 332, 338 (D.C. 2001) ("the [judicial proceedings] privilege is absolute rather than qualified"); *Arneja v. Gildar,* 541 A.2d 621, 623 (D.C.1988) (holding that "an attorney is protected by an absolute privilege to publish false and defamatory matter of another during the course of or preliminary to a judicial proceeding, provided the statements bear some relation to the proceeding.") (internal citations and quotation marks omitted). A statute that imposes no duty on opposing counsel, such as the FYCA, cannot reasonably be argued to limit the absolute immunity provided by the judicial proceedings privilege.

## 3. The Negligence Action Fails Because Opposing Counsel Owed No Duty To Ginsberg.

 Finally, we reject Ginsberg's argument on the merits of the claim that she was entitled to proceed on a negligence *per se* theory of liability. As we have noted, "Violation of a statute may give rise to a civil cause of action, and may constitute negligence *per se* [only] if the statute is meant to promote safety, if the plaintiff is a member of the class to be protected by the statute, and if the defendant is a person upon whom the statute imposes specific duties." *McCracken v. Walls–Kaufman,* 717 A.2d 346, 354 (D.C. 1998) (internal citations and quotation marks omitted).

Congress, in enacting the FYCA, intended "that rehabilitated youth offenders be spared the far more common and pervasive social stigma and loss of economic opportunity that in this society accompany the 'ex-con' label." *Doe v. Webster, supra,* 196 U.S.App.D.C. at 327, 606 F.2d at 1234. Unlike statutes held to promote public safety, prevention of "social stigma" in no way relates to the safety of the public at large. *See generally Jarrett v. Woodward Bros., Inc.,* 751 A.2d 972, 980 (D.C.2000)

(holding that a statute prohibiting tavern keepers from permitting alcohol consumption by underage patrons was designed to promote public safety); *Leiken v. Wilson,* 445 A.2d 993, 1002 (D.C.1982) (concluding that traffic regulations governing brakes have a " 'protective purpose' ... to forestall personal injury or property damage from uncontrolled vehicles"); *Ross v. Hartman,* 78 U.S.App.D.C. 217, 218, 139 F.2d 14, 15 (1943) (holding that an ordinance requiring that individuals lock their motor vehicles promotes public safety because unlocked motor vehicles "create[ ] much more risk that meddling by children, thieves, or others will result in injuries to the public.").

■ Although the FYCA arguably was designed to "protect persons in the plaintiff's position or to prevent the type of accident that occurred," it does not impose any duty on opposing counsel supporting a claim of negligence *per se. McNeil Pharm. v. Hawkins,* 686 A.2d 567, 579 (D.C.1996) (internal citations omitted). As noted by the trial court, there is no common law duty between a plaintiff and opposing counsel, and therefore no standard of care that could be breached. *See Morowitz, supra,* 423 A.2d at 199 (concluding that "a negligence action will not lie by a former defendant against adverse counsel"). The FYCA imposes no duties on opposing counsel that would contradict this well-established rule. *See McNeil, supra,* 686 A.2d at 579 (stating that a statute offered as the foundation for a negligence *per se* claim "must set forth specific guidelines to govern behavior.")

(internal citations and quotation marks omitted). Because the FYCA in no way promotes public safety and imposes no duties on opposing counsel, Ginsberg's negligence *per se* claim must also fail.

**B.**

■ As we have indicated, we think the trial court could fairly infer bad faith where the merits of a complaint are so wholly without support on several independent grounds as was the case here. But the trial court found, and we agree, that there are additional bases for inferring bad faith. For example, the trial court observed that Ginsberg's counsel was fully aware of District of Columbia cases squarely holding that the judicial proceedings privilege bars a negligence claim against opposing counsel.

Ginsberg filed the complaint involved in this proceeding in July 2005. Two years earlier, Mr. Rosen, Ginsberg's counsel, represented a different client in a court action filed against opposing counsel,[7] among others. The trial court granted summary judgment on the claim involving opposing counsel based on the judicial proceedings privilege. *Messina v. Fontana (Messina I),* 260 F.Supp.2d 173 (D.D.C. 2003).[8] The trial court in *Messina I* held that the judicial proceedings privilege "applies to statements [made] to persons having an interest in or connection to the litigation" and "affords absolute protection, without regard to the attorney's motives, for comments made preliminary to a judicial proceeding and related to it."[9] *Id.* at 178–79 (internal citations omitted).

7. Opposing counsel in that case were not the opposing counsel in this case.

8. Three years later, the trial judge's grant of summary judgment was affirmed. *Messina v. Krakower (Messina II),* 370 U.S.App.D.C. 128, 439 F.3d 755 (2006).

9. Ginsberg's argument that the trial court improperly referred to *Messina I, supra,* 260

F.Supp.2d at 173, and *Messina II, supra* note 8, 370 U.S.App.D.C. at 128, 439 F.3d at 755, is without merit. *See generally Hsu v. United States,* 392 A.2d 972, 985 (D.C.1978) ("There is precedent for an appellant [sic] court's taking judicial notice of the existence of other proceedings involving a defendant, in order to show his general familiarity with criminal procedure as that may bear along with other

 Here, the trial court relied on *Messina I* and *Messina II* to show that Ginsberg was fully aware that such a negligence claim did not lie because of the judicial proceedings privilege. In addition, the trial court noted in support of its finding that Ginsberg acted in bad faith that her counsel filed the Ginsberg Complaint shortly after his involvement in the *Messina* litigation and therefore "was aware of the District Court's holding in *Messina* when he filed the Ginsberg Complaint." Where counsel files a complaint, which he must know is barred by the judicial proceedings privilege based on his involvement in a recent case, we think the trial court can fairly find that counsel filed the complaint in bad faith.

In sum, we are satisfied no competent counsel would reasonably believe that the complaint here was not frivolous, *see Braley, supra*, 832 F.2d at 1512, and that Ginsberg's counsel was fully aware that an action for negligence did not lie in these circumstances. Therefore, we conclude that the trial court did not abuse its discretion in ruling that Ginsberg acted in bad faith in pursuing a claim that Ginsberg's counsel knew was frivolous based on his involvement in recent litigation on the same issue. *See Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766, 772–73 (9th Cir. 1986) (upholding bad-faith sanctions where the trial court had previously imposed sanctions for similar frivolous claims by other individuals that employer had breached employment contracts by with-

holding federal and state taxes); *Wang v. Gordon*, 715 F.2d 1187, 1190–91 (7th Cir. 1983) (affirming the trial court's finding that appellant's first and second amended complaints following a dismissal for failure to state a claim were "attempts to manufacture federal claims against these defendants where plaintiff knew or should have known that none existed"); *see also Van Sickle v. Holloway*, 791 F.2d 1431, 1437 (10th Cir.1986) (imposing sanctions under the court's inherent power where a litigant relitigated a claim barred by absolute immunity).[10]

### IV.

 In addition to ruling that Ginsberg's claim was wholly without merit for the reasons stated and inferring that because of its complete lack of merit it was brought in bad faith, the trial court found additional support for its conclusion that Ginsberg filed her lawsuit "for an improper purpose such as harassment." *Detroit Fed'n of Teachers, supra*, 829 F.2d at 1375. The trial court noted that (1) counsel, on behalf of Ginsberg, filed the complaint only four weeks after another trial judge in the *Granados* litigation issued sanctions and ordered an award of attorneys' fees in favor of appellees in this case for Ginsberg's discovery abuses; and (2) the complaint was filed around the same time that Ginsberg's counsel filed allegations with Bar Counsel against Granados' counsel, which the Office of Bar Counsel subsequently dismissed.[11]

---

evidence on the question of waiver."). Although Ginsberg argues that the issues in *Messina I* and *Messina II* "were never raised by the parties in the trial court," the *Messina* decisions address application of the judicial proceedings privilege, an issue raised by appellees in their Motion to Dismiss the Ginsberg Complaint.

**10.** Ginsberg's additional argument that the FYCA creates "privity" between the parties fails to provide any support for the claim in

her complaint. As noted above, the FYCA clearly creates no duties on opposing counsel. The FYCA therefore does not establish "privity" between the parties and creates no statutory cause of action against opposing counsel.

**11.** We do not place much significance on the filing of the complaints with Bar Counsel, except to the extent, as appellees argue in their brief, that it "was part of an ongoing baseless *ad hominem* attack by Mr. Rosen against his opposing counsel."

We think the trial court could properly conclude that the actions of Ginsberg's counsel throughout the *Granados* and *Ginsberg* litigation evince counsel's vexatious motive in filing the Ginsberg Complaint and that he did so for oppressive reasons. *See Wrenn v. Gould,* 808 F.2d 493, 505 (6th Cir.1987) (stating that "[a] litigant's prior record in the courts is not irrelevant in determining questions of good faith in the prosecution of lawsuits and appeals"). The trial court issued its order sanctioning Ginsberg for discovery abuses in the *Granados* litigation and ordering her to pay attorneys' fees just four weeks before counsel filed the complaint in this case against appellees.[12] Ginsberg's counsel further harassed appellees with the filing of allegations with Bar Counsel and the filing of a wholly meritless complaint. Counsel's pattern of harassing appellees throughout the course of the *Granados* and *Ginsberg* litigation supports the trial court's conclusion that Ginsberg acted in bad faith.

We also think that the tone of counsel's irresponsible personal attacks upon the trial judge, after the court's finding of bad faith, in his filings in the trial court and in this court, demonstrates a state of mind that itself "erodes the fairness of the judicial process" and borders on malevolency. *6921 Georgia Ave., supra* note 3, 954 A.2d at 972 (internal citation omitted); *see also In re Evans,* 801 F.2d 703, 707 (4th Cir.1986) ("Unjust criticism, insulting language and offensive conduct toward the judges, personally, by attorneys, who are officers of the court, which tend to bring the courts and the law into disrepute and to destroy public confidence in their integrity, cannot be permitted."). While counsel's subsequent statements were, of course, not considered by the trial court in making its findings, we believe that we cannot ignore counsel's remarks. Such baseless, hostile, and abusive attacks against a judicial officer offend common notions of decency and further support the trial court's finding of bad faith.[13]

---

**12.** The trial judge that sanctioned counsel in the *Granados* litigation was not the same trial judge who issued the order in the case now before this court.

**13.** Mr. Rosen disparaged the trial judge unnecessarily and without a legitimate basis, referring to the judge's "blatant and false misreading of the record, a deliberate distortion and falsification of facts which include a reckless attack" on counsel, and to the judge's "ignorance" and "incompetence." A lawyer engaged in "abusive or obstreperous conduct" may be subject to sanction under the District of Columbia Rules of Professional Conduct R. 3.5, cmt. 4 (calling on attorneys to "preserve professional integrity" and not engage in "belligerence or theatrics"). Other jurisdictions apply similar rules prohibiting abusive conduct directed toward judges. *See In re Whiteside,* 386 F.2d 805, 806 (2d Cir. 1967) (affirming that "grossly disrespectful allegations, repeatedly made, were so totally unfounded and so clearly in violation of the Canons of Professional Ethics as to justify disbarment."); *Ramirez v. State Bar of Cal.,* 28 Cal.3d 402, 169 Cal.Rptr. 206, 619 P.2d 399, 400 (1980) (upholding a disciplinary board's finding that petitioner violated his oath and duties as an attorney where he argued in a brief that the appellate judges acted "unlawfully" and "illegally" in reversing a trial court judgment in favor of petitioner's clients).

Mr. Rosen did not engage in "a single incident of rudeness or lack of professional courtesy," but rather "repeated ... unfounded accusations" voiced in an inappropriate tone. *In re Snyder,* 472 U.S. 634, 647, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985); *In re Zeno,* 504 F.3d 64, 66 (1st Cir.2007) (citing *In re Cordova–Gonzalez,* 996 F.2d 1334, 1335–36 (1st Cir. 1993) (finding that counsel's "abusive and disrespectful language against judges and opposing counsel" violated ABA Model Rules of Professional Conduct, and noting that attorneys have been disbarred for "vitriolic and ... unfounded personal assaults" on judges and opposing counsel)). Mr. Rosen's "pattern of unwarranted attacks on the professional integrity of [the] court" demonstrates a profound disrespect for the trial court that may subject him to sanctions under the Dis-

Finally, we conclude that although Ginsberg claims that she filed the complaint in this case to vindicate her rights under the FYCA, there is no justifiable rationale for Ginsberg's conduct in pursuing this lawsuit. *See Toon v. Wackenhut Corr. Corp.*, 250 F.3d 950, 953 (5th Cir.2001) (upholding a finding of bad faith where plaintiffs' counsel offered no "plausible good faith explanation for their conduct"). Ginsberg received a copy of her criminal record from appellees in response to a discovery request and, therefore, knew that the record was publicly available and did not reflect the fact that she had been sentenced under the FYCA or that the conviction had been set aside. Ginsberg could have protected her interests through an action to seal her conviction record, and we think she would have done so had protection of her set-aside conviction been her true interest. Instead, she chose to pursue meritless litigation designed to harass appellees.

Because Ginsberg's claim is wholly without merit and designed to harass appellees, and for the other reasons stated, the decision on appeal is hereby affirmed.

trict of Columbia Rules of Professional Conduct. *In re Dempsey*, 632 F.Supp. 908, 924–25 (N.D.Cal.1986) (suspending counsel and ordering him to undergo psychiatric and medical examinations based on his "digressions, circular arguments, impertinent remarks, and general confusion").