6921 GEORGIA AVENUE, N.W., LTD. Partnership, Appellant.

v.

UNIVERSAL COMMUNITY DEVELOPMENT, LLC, Appellee.

No. 07–CV–170.

District of Columbia Court of Appeals.

Argued May 13, 2008.
Decided Aug. 7, 2008.
As Amended Nov. 4, 2008.

Roger D. Luchs, Washington, with whom Richard W. Luchs, was on the brief for appellant.

*Christopher C.S. Manning for appellee.

Before RUIZ, Associate Judge, PRYOR, Senior Judge, and FARRELL,** Associate Judge, Retired.

PRYOR, Senior Judge:

This appeal stems from the trial court's denial of appellant 6921 Georgia Avenue, N.W., Ltd. Partnership's ("Partnership") request for attorneys' fees to be paid by appellee Universal Community Development, LLC ("Universal"). We conclude the trial court did not abuse its discretion in denying Partnership's request for attorneys' fees generally, and affirm the trial court's decision as to this question. However, we also find the trial court failed to duly consider whether Partnership was entitled to attorneys' fees under D.C.Code § 42–1207 (2001) in relation to Universal's filing of *lis pendens* and remand so that

---

* Appellee's counsel in this case was not trial counsel.

** Judge Farrell was an Associate Judge of the court at the time of submission. His status changed to Associate Judge, Retired, on July 1, 2008.

the trial court may enter a finding on this issue.

## I.

This matter originated with Universal's claim against Partnership for specific performance to "compel a good faith bargaining by Partnership," relating to the sale of an apartment building owned by Partnership located in the District of Columbia. In their complaint, Universal alleged they had a right to purchase this building as an assignee of the building's tenant association's right to purchase under the Tenant Opportunity to Purchase Act, D.C.Code §§ 42–3404.01 *et seq.* (2001). On July 6, 2005, Universal submitted to Partnership a contract proposal which matched the purchase price offered by a third party purchaser of the apartment building. In this proposal, Universal represented they had paid a $20,000 deposit to Washington Legal Group, Universal's counsel at the time. In response, Partnership requested Universal to increase the deposit amount to $35,000 and place the deposit with a licensed title company. Following further communications between the parties, Universal submitted a revised contract proposal on October 7, 2005, which provided that a deposit in the amount of $35,000 would be made to Cosmopolitan Real Estate Settlement Inc. ("Cosmopolitan") "within 5 days of a ratified contract." On October 25 or 26, 2005, after additional communication, Universal submitted a revised contract, stating that Cosmopolitan was in receipt of a $35,000 check to serve as a deposit from Universal. At no time during these communications did Universal provide Partnership with a copy of the deposit check or other proof of payment to Cosmopolitan.

When Partnership ultimately rejected Universal's proposal to purchase the building, Universal filed suit for specific performance as well as a notice of *lis pendens* pursuant to D.C.Code § 42–1207. Partnership then filed counterclaims for declaratory relief and for damages and attorneys' fees resulting from abuse of process and slander of title.

Over the course of the litigation, Universal repeatedly failed to respond fully to Partnership's discovery requests, including Partnership's request for proof that Universal had deposited $35,000 with a licensed title company. At the conclusion of the discovery period, Partnership moved for summary judgment, arguing in part, that Universal had failed to offer any evidence that the necessary deposit of $35,000 had in fact been made. In turn, Universal filed a motion in opposition, informing the court that it had placed a deposit of $35,000 in escrow with Cosmopolitan. However, Universal failed to produce evidentiary proof of the deposit.

On January 8, 2007, the trial court granted summary judgment in favor of Partnership. In its oral ruling on the motion, the judge noted that Universal had failed to present prima facie evidence that the required deposit had been made and concluded there was no genuine issue of material fact to be submitted to a finder of fact on this question. Prior to the court's ruling on attorneys' fees, Universal moved to vacate the summary judgment order. Included in Universal's motion to vacate was a receipt for deposit in the amount of $35,000 paid to Cosmopolitan and dated October 27, 2005. The trial court orally denied this motion, commenting that it was "curious" that Universal had failed to previously produce the receipt of deposit and that the receipt now produced was unaccompanied by any sworn attestations of its veracity. In addition to denying Universal's motion to vacate, the trial judge granted attorneys' fees to Partnership to be paid as a consequence of Universal's

counsel's failure to appear at a scheduled deposition. Orally, and in a subsequent written order, the trial judge denied the motion for attorneys' fees generally, and also for fees related to the *lis pendens* filing. As to the former, the court stated orally that "although ... the level of handling [of this case] could be severely criticized, the court does not find that there is bad faith based upon the totality of the facts and circumstances." The judge denied the request for fees as to *lis pendens* without prejudice. This appeal followed.

## II.

### A.

 The responsibility for paying attorneys' fees stemming from litigation, in virtually every jurisdiction, is guided by the settled general principle that each party will pay its respective fees for legal services. However, this *American Rule* is subject to exception premised upon statutory authority, contractual agreement, or certain narrowly defined common law exceptions. *Synanon Foundation, Inc. v. Bernstein,* 517 A.2d 28, 35 (D.C.1986). This jurisdiction recognizes what is often called the bad faith exception to the general rule. *Id.* at 37. Under this exception, a party may recover attorneys' fees from an opposing party by demonstrating that the party acted in bad faith either by filing a frivolous action, or by litigating a properly filed action in a frivolous manner. *Jung v. Jung,* 844 A.2d 1099, 1108 (D.C.2004). " 'An action is brought in bad faith when the claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons.' " *Synanon,* 517 A.2d at 40 (quoting *Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078, 1088 (2d Cir.1977)). In litigating a colorable claim, a party's bad faith "may manifest itself through procedural maneuvers lack-

ing justification or for an improper purpose, such as harassment or delay." *Jung,* 844 A.2d at 1108 (internal citation and quotation marks omitted). "Attorneys' fees for bad faith litigation are [ ] proper only in the presence of extraordinary circumstances or when dominating reasons of fairness so demand." *Synanon,* 517 A.2d at 37 (internal citations omitted). "The party's bad faith conduct must be so egregious that fee shifting becomes warranted as a matter of equity." *Jung,* 844 A.2d at 1107 (internal citation omitted). Furthermore, "[b]ad faith must be distinguishable from ... negligence or professional incompetence." *In re Jumper,* 909 A.2d 173, 177 (D.C.2006).

### B.

 Because the relief sought is exceptional, and the trial judge has firsthand knowledge of the case, the decision with respect to shifting attorneys' fees to an opposing party is entrusted to the discretion—within limits—of the trial judge. This court reviews a trial court's decision for abuse of that discretion. *Jung,* 844 A.2d at 1108. A trial court's findings of bad faith "is a factual one which we review under the clearly erroneous standard...." *Id.* "Our review of the trial court's ultimate decision to deny attorneys' fees is confined to a determination of 'whether the [trial court] failed to consider a relevant factor, whether [it] relied upon an improper factor, and whether the reasons given reasonably support the conclusion.' " *Id.* at 1108–1109 (internal citation omitted).

### C.

 Although there were multiple motions filed in this case, the summary judgment motion was certainly central to the litigation. When the judge granted that motion and, speaking from the bench, not-

ed the difference between poor quality representation and bad faith, he stated the precise issue regarding attorneys' fees in this instance. Concluding that the total circumstances did not warrant shifting appellant's legal fees to appellee, he denied relief. Simply stated, appellant contends that based on the facts of record the ruling was an abuse of discretion and therefore error.

We know that shifting responsibility to pay legal fees to the opposing party is not perfunctory and may fairly be characterized as unusual. In order to demonstrate bad faith as compared to incompetence, *In re Jumper*, 909 A.2d at 177, it is necessary to show extraordinary conduct which erodes the fairness of the judicial process. *Synanon*, 517 A.2d at 37. Having heard the trial judge state his oral ruling on the determinative issue in the motion, appellant, the moving party, did not request a hearing or pursue any other means of proffering evidence to support a conclusion of bad faith. Specifically, despite its claim on appeal that Universal engaged in deception and "fraud on the court" by falsely representing to the trial court that it had placed the deposit with Cosmopolitan, Partnership did not request an evidentiary hearing and related findings by the court as to the truth or falsity of Universal's representation to the court. *See Synanon*, 517 A.2d at 37 ("fraud upon the court" is one form of conduct warranting sanction of fee award). As the movant on the question, appellant had an obligation to marshall the evidence of purported bad faith, mindful of the record for our review. We therefore review the question on the basis of the existing record.[1] Specifically, the trial judge concluded

> The court does not believe that this action brought by the plaintiff was done in bad faith. Although the court believes

that the level of handling could be criticized, the court does not find that there is bad faith based upon the totality of the facts and circumstances, and the court's own involvement in this case.

We conclude, on the record presented, that the findings are not clearly erroneous, and the judge did not abuse his discretion.

**D.**

Turning to appellant's claim that the trial court improperly denied appellant's request for attorneys' fees related to Universal's *lis pendens* filing, we note the trial court failed to give due consideration to whether sanctions against Universal were appropriate in this matter. The pertinent language of this jurisdiction's *lis pendens* statute relating to sanctions for misfiling reads:

> (d) If judgment is rendered in the action or proceeding against the party who filed the notice of the pendency, the judgment shall order the cancellation and release of the notice at the expense of the filing party as part of the costs of the action or proceeding. *When appropriate, the court may also impose sanctions for the filing.* . . . (Emphasis added.)

D.C.Code § 42–1207. It is unclear from the language of the statute what standard a court is to employ in determining the appropriateness of such sanctions. A review of the legislative history of D.C.Code § 42–1207 is similarly unrevealing. *See* COUNCIL OF THE DISTRICT OF COLUMBIA COMMITTEE ON THE JUDICIARY, REPORT ON BILL 13–267, the Fairness in Real Estate Transactions and Retirement Funds Protection Act of 1999 (December 21, 1999).

However, in relation to D.C. Law 13–129, which was incorporated into the

---

1. *Compare In re Estate of McKenney*, No. 05– PR–1271 (D.C.2008).

District of Columbia Code as D.C.Code § 42–1207, the D.C. Council included as an attachment the testimony of Cheryl Edwards, the then Deputy Recorder of Deeds for the District of Columbia, Office of Tax and Revenue, who brought to the Council's attention the existence of Virginia's *lis pendens* statute. *Id.* This statute, VA.CODE ANN. § 8.01–269 (1999), provided that a court may, in releasing *lis pendens,* "in an appropriate case, impose sanctions as provided in [VA.CODE ANN.] § 8.01–271.1." VA. CODE ANN. § 8.01–271.1, in turn, allows sanctions where an attorney is found to have filed papers with the court that are not grounded in fact, are unwarranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or are interposed for an improper purpose. This statute is similar to Super. Ct. Civ. R. 11, which allows a court to impose sanctions where an attorney has made a filing with the court for improper purposes, or that is unwarranted by existing law or a frivolous argument for the extension, modification, or reversal of existing law, or an argument that is without evidentiary support. This standard for imposing sanctions is less demanding than the traditional *American Rule* exception requiring a court to find that a party acted in bad faith. *See In re Estate of Delaney,* 819 A.2d 968, 998 (D.C.2003) ("Under these stringent standards, the awarding of attorneys' fees for bad faith litigation is proper only under extraordinary circumstances or when dominating reasons of fairness so demand.") (citations and quotation marks omitted).

Because the Council was at least aware of the Virginia statute authorizing sanctions for release of *lis pendens,* which employed a similar standard as that articulated for Rule 11 violations in this jurisdiction, and in light of the fact that the statutory language does not indicate

otherwise, we conclude that a trial court, in determining whether sanctions are appropriate under D.C.Code § 42–1207(d), should assess whether the non-prevailing party's filing of *lis pendens* was for an improper purpose, or was unwarranted by existing law or a frivolous argument for the extension, modification, or reversal of existing law, or was without evidentiary support. A trial court need not make a finding of bad faith in relation to a party's filing of *lis pendens* in order to exercise its discretion in imposing sanctions under D.C.Code § 42–1207(d).

We, of course, make no determination as to whether Universal's conduct in filing *lis pendens* warrants the imposition of sanctions. That determination must first be made by the trial court, and may be reviewed by this court for abuse of discretion. Because the trial court made no determination as to whether appellant was entitled to sanctions under D.C.Code § 42–1207(d) as a result of Universal's filing of *lis pendens,* we remand so that a finding as to this matter may be made employing the above articulated standard.

*Affirmed in part; remanded in part.*