**Herbert HUNDLEY, Appellant,**

v.

**James JOHNSTON, Appellee.**

**No. 09–CV–1457.**

District of Columbia Court of Appeals.

Argued March 24, 2011.

Decided April 28, 2011.

Kenneth H. Rosenau, for appellant.

William F. Burton, Washington, DC, for appellee.

Before FISHER, Associate Judge, REID, Associate Judge, Retired,* and FERREN, Senior Judge.

---

* Judge Reid was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on April 7, 2011.

FERREN, Senior Judge:

Herbert Hundley appeals the trial court's denial of his Super. Ct. Civ. R. 54 motion for an award of attorney's fees after a jury verdict in his favor on his abuse of process claim against the appellee, James Johnston. Hundley alleges that the trial court abused its discretion when it found insufficient bad faith on Johnston's part to warrant the claimed fee award. Because the trial court's findings and conclusions are insufficient for us to determine whether the court's discretion has been properly exercised, we must remand the case for further proceedings.

## I.

In 2001, the parties purchased a home together, located at 1957 Biltmore Street, N.W., as joint tenants.[1] Over the next several years, they renovated the home and took out a mortgage loan of over a million dollars to refinance the property. In 2007, their relationship began to unravel, culminating in a physical altercation in February of that year. After the incident, Johnston obtained *ex parte* a temporary civil protection order (CPO) against Hundley from the Superior Court Domestic Violence Unit. The court also ordered Hundley, who was out of town at the time, to vacate the property.[2] On the day the CPO was issued, Johnston withdrew all the funds, exceeding $160,000, from his joint bank account with Hundley.

On March 12, 2007, Johnston filed a complaint against Hundley for assault and battery. Two days later, Hundley filed an action to partition their jointly held property by sale.[3] The actions were consolidated on March 14. On October 4, Johnston filed an amended complaint including counts of intentional and negligent infliction of emotional distress and punitive damages. On October 19, Hundley filed his amended answer and a counterclaim for abuse of process against Johnston, alleging that Johnston had filed a false CPO in claiming to have been the victim of an assault and battery.

In the partition action, the trial court (Judge Linda Turner) "denied Hundley's request for appointment of a trustee to sell the property" and "permitted Johnston to remain the sole occupant ... and to attempt to sell the property himself, upon his representation that he would assume Hundley's share of the monthly mortgage payments."[4] The property still had not been sold by late 2007, and on December 13, the court granted Hundley's motion for summary judgment requesting an order for partition by sale.[5] The court directed the parties to agree on a price and to sell the property "jointly" and expeditiously.[6] The court then scheduled evidentiary hearings to address related matters, such as the parties' respective entitlements to rent from three portions of the property and to the proceeds from their joint bank account

1. *See Johnston v. Hundley*, 987 A.2d 1123, 1125 (D.C.2010). The other facts in this paragraph are drawn from this opinion, as well as from the trial record.

2. According to the trial court order disposing of Hundley's suit for partition of the property (see *infra* next paragraph), Hundley filed a cross-petition for CPO against Johnston. Both petitions were dismissed on April 6, 2007, by mutual consent. See Order, Aug. 4, 2008, Case No.2007 CA 001891 B at 1, n. 1.

Curiously, and unexplained, the "equivalent of a Civil Protection Order was entered in this jacket by consent of the parties." *Id.*

3. See *supra* note 1.

4. *Johnston v. Hundley, supra* note 1, 987 A.2d at 1125.

5. *Id.*

6. *Id.*

which Johnston had withdrawn, as well as the parties' respective obligations to pay for the costs of improvements required to ready the property for sale.[7] The property eventually was sold, and on August 4, 2008, the court issued a final order dividing the proceeds and resolving the other issues.[8] On appeal, this court remanded on several aspects of the trial court's order and affirmed as to the rest.[9]

Although Hundley's partition suit had initially been consolidated with Johnston's assault and battery and Hundley's abuse of process claims, it had been severed as a result of Hundley's summary judgment motion. Thus, we consider these other two claims, which were tried later before Judge John Ramsey Johnson beginning on July 6, 2009 after considerable pretrial activity, including discovery, a successful motion by Hundley to have Johnston undergo an independent medical exam,[10] and a failed effort at mediation.[11]

On July 8, the jury found against Johnston on the assault and battery claim and in favor of Hundley on his abuse of process counterclaim and awarded Hundley damages totaling $16,500.[12] On July 22, Hundley's counsel filed a timely motion for an award of attorney's fees pursuant to Super. Ct. Civ. R. 54 based on Johnston's alleged bad faith conduct of the litigation. On October 30, 2009, the trial court issued an Omnibus Order denying the fee motion and disposing of costs.[13] Hundley filed a timely appeal of the portion of that order denying his request for attorney's fees.

## II.

A few years ago, we elaborated this court's approach to attorney's fees:

> The responsibility for paying attorneys' fees stemming from litigation, in virtually every jurisdiction, is guided by the settled general principle that each party will pay its respective fees for legal services. However, this American Rule is

7. *Id.* at 1125–26.

8. *Id.* at 1126.

9. See *supra* note 1.

10. In October 2007, the trial court granted Hundley's Motion for an Independent Medical Exam of Johnston, who filed a motion to reconsider the order. The court denied Johnston's motion, but the examination never took place. The issue became moot when Johnston withdrew his claim for emotional distress. See *infra* note 44.

11. There was also a third, relatively minor issue at the trial. In addition to abuse of process, Hundley's counterclaim also alleged property damage as a result of Johnston's failure to safeguard Hundley's personal property at the 1957 Biltmore Street residence while the CPO was in effect and the litigation was ongoing. Hundley testified that by May 2007, Johnston had moved all of Hundley's property into the garage, including fifty to sixty boxes of personal belongings as well as furniture. Johnston had testified that he had

Hundley's furniture professionally wrapped, but Hundley introduced in evidence photographs of the furniture showing all of it stacked and sitting in the garage unwrapped and otherwise unprotected. He represented at trial that there was approximately $10,000 worth of damage to his property as a result of its remaining in an unheated garage that was not water tight, causing the furniture to buckle, upholstery to be ruined, and veneers to be lifted.

12. The verdict form awarded Hundley $15,000 for the abuse of process claim and $1,500 for damage to property. See *supra* note 11.

13. The October 30, 2009 Omnibus Order states the following reasons for denying the motion for attorney's fees: "While the Court of course recognizes the jury verdict favoring the Defendant [Hundley] on the counter-claim for Abuse of Process, that count related to the misuse of the Civil Protection Order process. In the view of the Court, litigation of the rest of the case by the Plaintiff [Johnston] did not rise to the level of bad faith."

subject to exception premised upon statutory authority, contractual agreement, or certain narrowly defined common law exceptions. This jurisdiction recognizes what is often called the bad faith exception to the general rule. Under this exception, a party may recover attorneys' fees from an opposing party by demonstrating that the party acted in bad faith either by filing a frivolous action, or by litigating a properly filed action in a frivolous manner.[14]

Moreover, "we have emphasized that the standards for a showing of bad faith are necessarily stringent, precluding awards for attorneys' fees in the absence of extraordinary circumstances or dominating requirements of fairness."[15]

Super. Ct. Civ. R. 54(d)(2)(A) provides in relevant part that "[c]laims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial." A party may file a motion pursuant to Super. Ct. Civ. R. 54 alleging that it is entitled to a fee award based on the bad faith exception to the American Rule.[16]

▮▮▮ A trial court's findings of bad faith are factual and reviewable under the clearly erroneous standard.[17] "Our review of the trial court's ultimate decision to deny attorneys' fees is confined to a deter-mination of whether the [trial court] failed to consider a relevant factor, whether [it] relied upon an improper factor, and whether the reasons given reasonably support the conclusion."[18]

## III.

### A.

Hundley's Rule 54 motion alleges bad faith, justifying an award of attorney's fees for virtually the entire two-plus years of litigation, beginning with the date of counsel's first meeting with Hundley on March 7, 2007 (not long after Johnston had filed for the CPO) through June 29, 2009 (ending a week before commencement of trial).[19] Hundley acknowledges that he is "not seeking fees for anything" in his exhibit 6 "relating to the partition action." His claim, therefore, is limited to fees he attributes to "all the times spent on the battery case and the abused process." Those fees, listed in his exhibit 7, total $59,359.25, from which he subtracts $15,000 awarded by the jury,[20] resulting in a net claim of $44,359.25.

Although Hundley seeks attorney's fees only for this "abuse of process and battery trial,"[21] he premises his claim on Johnston's bad faith conduct in both "this and the parallel litigation." His fee motion is not limited to instances of bad faith in this lawsuit (and its antecedent CPO proceed-

---

**14.** *6921 Georgia Avenue, N.W., Ltd. Partnership v. Universal Community Development, LLC,* 954 A.2d 967, 971 (D.C.2008) (internal citations omitted) (hereafter *Georgia Avenue* ).

**15.** *Jung v. Jung* (*Jung II* ), 844 A.2d 1099, 1108 (D.C.2004).

**16.** *See Ginsberg v. Granados,* 963 A.2d 1134, 1137 (D.C.2009).

**17.** *Georgia Avenue, supra* note 14, 954 A.2d at 971.

**18.** *Id.* (citation and internal quotation marks omitted).

**19.** For reasons not evident in the record, counsel for Hundley did not file a fee motion covering his time at trial.

**20.** See *supra* note 12.

**21.** Hundley filed a separate exhibit 6, reflecting attorney time spent on the partition action, for which he is "not seeking fees."

ing);[22] it also references findings by Judge Turner in the earlier partition litigation.[23] At oral argument on appeal, counsel clarified that, while seeking attorney's fees "only from within this specific civil case," Johnston's bad faith, for purposes of the fee award, can be found in his actions "before the complaint was filed."[24] In sum, counsel limits his fee claim to alleged *instances* of bad faith appropriately drawn from this litigation, and only this litigation; but he asserts that *evidence* from sources outside this litigation—in particular, from the earlier partition action—can be relevant, and thus admissible, to prove John-

ston's bad faith in the lawsuit we are considering here.

### B.

Hundley offers two reasons why the trial court abused its discretion in denying the fee motion. First, he says, the trial court wrongfully concluded that Johnston's assault and battery litigation had not reached the level of bad faith. Second, according to Hundley, the trial court did not fully explain the reasoning that underlay its denial of the fee motion, as required by Super. Ct. Civ. R. 54(d)(2)(C);[25] the

---

**22.** In his fee motion, Hundley alleged many examples of Johnston's bad faith in this litigation. In his brief on appeal, he distilled them into "seven distinct procedural maneuvers" or "instances" that best demonstrate that bad faith. The first three concern Johnston's actions underlying the abuse of process claim, namely, allegations of (1) his "false and misleading" representations to the trial court in obtaining the CPO; (2) Johnston's "misuse" of the CPO process, including a temporary restraining order, to achieve an "improper result" (Hundley's eviction); and (3) Johnston's use of the temporary restraining order to cause "vexatious delay" in Hundley's efforts to retrieve his personal belongings from their home. Additional instances included (4) Johnston's filing of a false police report against Hundley for unlawful entry after agreeing to allow Hundley into the home to retrieve his belongings; (5) Johnston's failure to put on an expert witness at trial despite his representation that he would do so, necessitating Hundley's retention of an unused, expensive expert witness; (6) Johnston's claim for punitive damages, which he later withdrew at trial; and (7) Johnston's refusal to comply with a court-ordered independent medical examination.

**23.** The first page of Hundley's fee motion quotes one paragraph from Judge Turner's fourteen-page order of August 4, 2008 resolving the partition litigation (exhibit 1 to the fee motion). In that paragraph, the judge finds that a claim by Johnston to have paid $110,000 to a contractor was "factually and legally flawed." Later, on page 6 of Hundley's motion, he cites pages 9 to 14 of Judge

Turner's order, where she found that Johnston, who had assumed responsibility for selling the jointly-owned house, had "dragged his heels" in a "falling market." The judge awarded Hundley $200,000 as his share of lost profits attributable to that delay. The judge also awarded Hundley damages representing lost rents and his share of the funds that Johnston had withdrawn from the joint bank account. On appeal, this court found no abuse of discretion in Judge Turner's finding that Johnston's "sales efforts" had been "less than diligent," *Johnston v. Hundley, supra* note 1, 987 A.2d at 1128, but we reversed for insufficient evidence to support the judge's finding of lost profits, and we remanded for reconsideration of the other damages, in part based on credits allegedly owed to Johnston.

**24.** In response to a question from the court, counsel replied: "The actual damages come only from the filing of the complaint and counterclaim forward in time. That's in terms of the measure of damages. The bad faith—it comes from someone's state of mind, from someone's—what we infer from various actions, and those actions can be from before the complaint was filed. Those actions can be from the CPO, the filings and withdrawal, the filings and withdrawal—the measure of damages is only from within this specific civil case."

**25.** Super. Ct. Civ. R. 54(d)(2)(C) provides:

On request of a party or class member, the Court shall afford an opportunity for adversary submissions with respect to the

court simply dispatched in two sentences the many instances showing Johnston's bad faith.[26]

Johnston replies, first, that the trial court properly denied Hundley's Rule 54 motion because attorney's fees are provided as part of the recovery for an abuse of process claim and thus were included in the jury's damage award. The doctrine of *res judicata*, therefore, bars relitigation of a fee claim for abuse of process.[27] Furthermore, according to Johnston, given the final judgment, *res judicata* also bars Hundley's subsequent pursuit of attorney's fees for Johnston's alleged bad faith litigation of the other issues. Finally, contends Johnston, the record confirms in any event that the trial court sufficiently explained the reasoning in support of its ruling that Johnston's litigation conduct did not rise to the level of bad faith.

Analytically, for reasons that shall appear, the fee issue must be considered in two parts: (1) fees allegedly awardable in connection with Hundley's successful claim against Johnston for abuse of process, and (2) fees claimed awardable for the balance of the litigation.

## IV.

■ Johnston contends that all attorney's fees recoverable for abuse of process were included in the jury's award.[28] We begin with the question whether, in the words of Super. Ct. Civ. R. 54(d)(2)(A), a claim for abuse of process is "substantive law" that "provides for the recovery of [attorney's] fees as an element of damages to be proved at trial." If it does, that claim falls within the Rule 54 exception and thus is not eligible for a fee award

---

motion [for attorney's fees] in accordance with Rule 43(e). The Court may determine issues of liability for fees before receiving submissions bearing on issues of evaluation of services for which liability is imposed by the Court. *The Court shall find the facts and state its conclusions of law as provided in Rule 52(a),* and a judgment shall be set forth in a separate document as provided in Rule 58. [Emphasis added.]

Super. Ct. Civ. R. 52(a) provides in relevant part:

... [F]indings of fact and conclusions of law ... *shall be sufficient if they state the controlling factual and legal grounds of decision.* Findings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. ... [Emphasis added.]

**26.** See *supra* note 13.

**27.** *See, e.g., Gilles v. Ware,* 615 A.2d 533, 538 (D.C.1992) (*res judicata* "generally extends to dismissals, to summary judgments, and to judgments upon a verdict after trial").

**28.** The judge instructed the jury as follows on abuse of process and damages:

Mr. Hundley has claimed that Mr. Johnston has knowingly and intentionally used the temporary protection order and civil protection order process for an improper purpose, namely, to remove Mr. Hundley from their jointly owned home by court order thereby gaining exclusive control over their home and contents for a period of time. If two people own a house, both have a right to live there unless a court has ordered otherwise. Mr. Hundley's claim of abuse of process alleges that the court order obtained by Mr. Johnston, and challenged in this case, was wrongly obtained. If you find by a preponderance of the evidence that Mr. Johnston did abuse the process of the court, then your verdict should be for Mr. Hundley on that count.

If you find for a party, then you must award him a sum of money which will fairly and reasonably compensate him for all the damage which he experienced which was proximately caused by the other party.

*See Wood v. Neuman,* 979 A.2d 64, 76 (D.C. 2009); *Morowitz v. Marvel,* 423 A.2d 196, 198 (D.C.1980); *Jacobson v. Thrifty Paper Boxes, Inc.,* 230 A.2d 710, 711 (D.C.1967).

under that rule.[29]

■ According to the Restatement (Second) of Torts § 914 (2010), "damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of litigation."[30] However, "[w]hen the essential elements of a cause of action for wrongful civil proceedings have been established, the plaintiff is entitled to recover for ... the expense that he has reasonably incurred in defending himself against the proceedings."[31] As other courts have made clear, "[t]he "natural and probable" consequences of an abuse of process lawsuit include the costs incurred in successfully defending the charge. As such, fees for defending such a lawsuit are considered compensatory damages, not attorney's fees."[32] These authorities make clear that a tort action for abuse of process, unlike most other tort actions, is "substantive law" that provides for recovery of attorney's fees as an "element of damages" awardable by the fact-finder.

Accordingly, abuse of process claims are ineligible for fee motions under Rule 54.

The record confirms that the jury awarded Hundley attorney's fees for Johnston's abuse of process in obtaining the CPO. During closing argument, Hundley's counsel told the jury that "Mr. Hundley is asking for two things—to be made whole in essence—damage to his furniture and his legal fees. That's it." The jury awarded $1,500 for "damage to property" and $15,000 for "abuse of process"—recovery, respectively, for the "two things" counsel requested.[33] That $15,000, therefore, is the limit on the fees Hundley can recover for abuse of process.

## V.

■ As noted earlier, Hundley claims $59,359.25 in attorney's fees for the litigation over abuse of process and assault and battery, leaving a balance of $44,359.25 after deducting the $15,000 awarded by the jury.[34] Putting aside how much of that balance would be attributable to the as-

29. See supra part II. To date, we have had only one occasion to consider the "substantive law" exception under Super. Ct. Civ. R. 54(d)(2)(A). In *Calomiris v. Calomiris*, 3 A.3d 1186, 1193 (D.C.2010), we held that the trial court erred in dismissing a fee claim as untimely filed under Rule 54(d)(2)(A). We noted that the claim was derived from an indemnification provision in a contract—"an element of damages to be proved at trial"—not from the claimant's status as the prevailing party in the underlying action. Accordingly, the claimant was free to seek fees outside the rule under the subsection (A) exception.

30. *See Safeway Stores, Inc. v. Chamberlain Protective Services, Inc.*, 451 A.2d 66, 69 n. 5 (D.C.1982).

31. Restatement (Second) of Torts at § 681; *see, e.g., Tri–State Hospital Supply Corp. v. United States*, 358 U.S.App. D.C. 79, 92, 341 F.3d 571, 584 (2003).

32. *Millennium Equity Holdings, LLC v. Mahlowitz*, 456 Mass. 627, 925 N.E.2d 513, 528 (2010) (citing 2 Dan B. Dobbs, The Law of Torts § 440, at 1242 (2000) (damages for misuse of civil process include "reasonable attorney fees and other expenses incurred in defending the wrongful criminal or civil litigation")); *accord Zachair, Ltd. v. Driggs*, 135 Md.App. 403, 762 A.2d 991, 1007 (2000) ("where a civil suit has been brought through misuse of legal procedure, '[c]ounsel fees incurred in defending against the wrongful civil suit are prominent among items of recovery ....'") (quoting W. Page Keeton, Prosser and Keeton on the Law of Torts § 120, at 895 (5th ed. 1984)).

33. *See supra* note 12.

34. Hundley has not confirmed on appeal that $15,000 represents the full amount he charged for pursuing abuse of process; he may have allocated an additional, undesignated portion of the $44,359.25 to that claim, with the balance—presently an unknown amount—allocable to assault and battery.

sault and battery litigation,[35] we address the threshold bad-faith issue.[36]

### A.

This court has noted that conduct justifying an award of attorney's fees under the bad faith exception "may be found either in the filing of a frivolous claim or in the manner in which a properly filed claim is subsequently litigated."[37] Hundley told the trial judge that both have occurred here. First, his fee motion states that Johnston's "filing on the Assault and the later amendments" to his complaint reflected bad faith because, in the words of another of our decisions, it was a "claim entirely without color" which had been "asserted wantonly, for purposes of harassment or delay, or for other improper reasons."[38] Second, he emphasized to the trial court, and repeats here, three "bad faith maneuvers"[39] allocable to the assault and battery portion of the litigation: John-

ston's failure to put on a promised expert witness, causing Hundley unnecessary expense for a counter-witness; Johnston's withdrawal, at trial, of his count for punitive damages, reflecting that count's "vexatious nature"; and Johnston's refusal to comply with a court-ordered medical examination,[40] an order that became moot upon Johnston's withdrawal of his claims for emotional distress eleven months before trial.

Although Hundley's fee motion claimed bad faith in Johnston's filing the complaint for assault and battery, and he cites on appeal our case law (quoted above) stating the criteria for awarding attorney's fees when a complaint is filed in bad faith, he does not pursue that allegation on appeal. Both his opening brief and his reply to appellee's brief are limited to discussing the alleged "procedural maneuvers" indicating bad faith during the litigation.[41]

---

**35.** *See supra* note 34.

**36.** Johnston's argument that *res judicata* bars Hundley's claim for all fees not litigated before the jury in this case, see supra part III. B., is not correct. A portion of the fees Hundley claims here are allocable to defending Johnston's assault and battery action, which does not fall within the Rule 54(d)(2)(A) exception applicable to abuse of process and thus did not come under the jury's purview.

**37.** *General Federation of Women's Clubs v. Iron Gate Inn*, 537 A.2d 1123, 1128 (D.C. 1988).

**38.** *Synanon Foundation, Inc. v. Bernstein*, 517 A.2d 28, 40 (D.C.1986) (citation and internal quotation marks omitted).

**39.** *See id.* (citation and internal quotation marks omitted).

**40.** See *supra* note 22 (items 5 through 7). Of the seven procedural maneuvers by Johnston that Hundley challenges here, the first three are irrelevant because they pertain to Hundley's claim for abuse of process. Item 4, Johnston's filing of a police report against Hundley alleging unlawful entry after the par-

ties had agreed that Hundley could enter the home to retrieve his belongings, seems closer to his claim for property damage, or even to the partition action, than to defense of Johnston's assault and battery claim. A hearing on the fee motion would have helped the trial court understand how, if at all, item 4 could properly be part of Hundley's Rule 54 claim. A hearing also would have helped clarify why item 7, Johnston's failure to comply with the required medical exam, was a bad-faith move, given withdrawal of his emotional distress claims—a result perhaps accomplished (although we do not know) by defense counsel's skillful advocacy rather than by Johnston's unwillingness to follow through with the exam.

**41.** The first sentence of Hundley's opening brief states that "Johnston ... filed yet another frivolous suit against Hundley." He then references eight "instances" or "Events" of bad faith by Johnston in the partition action and seven "bad faith tactics used in the case underlying this appeal." Later, in the argument section, counsel quotes from our case law the respective criteria for bad faith initiation of an action, and bad faith maintenance

We therefore confine our analysis accordingly.

### B.

To begin, we take up Hundley's assertion that Johnston's bad faith evident from the partition litigation, including the conduct that gave rise to it, is relevant to ascertaining Johnston's bad faith in conducting the assault and battery litigation. Hundley is correct. Federal courts have applied the exception "both when bad faith occurred in connection with the litigation and when it was an aspect of the conduct that gave rise to the lawsuit."[42] We agree with this interpretation. A bad faith motive can germinate well before it develops into vexatious conduct (although attenuation may limit how far back in time a bad faith motive can be traced).[43]

In this case, the trial judge had before him some history of the relationship between the parties, at least to the extent revealed in exhibit 1 to the fee motion containing Judge Turner's ruling in the partition action. And the judge, of course, was also privy to all behavior before his own court relevant to Hundley's fee claim, that is, the parties' interactions reflected in Johnston's complaint for assault and battery and Hundley's counterclaim for abuse of process in Johnston's obtaining the CPO. The question, then, is whether the trial judge, after acknowledging the jury's abuse of process verdict, abused his discretion in ruling that the bad faith issues left

in "the rest of the case" (the assault and battery litigation)[44] "did not rise to the level of bad faith" required to satisfy the bad faith exception.

### C.

To put the matter in perspective we note, first, our decision in *Jung v. Jung* (*Jung I*),[45] an acrimonious family dispute between a sister and her two brothers over disposition of their mother's estate. After resolution of the matter in a probate proceeding, the sister sued her brothers for emotional distress. During trial, the court imposed $12,000 in attorney's fees against the sister for obstructing discovery and then entered judgment for the brothers as a matter of law. One of the brothers subsequently filed a motion to recover all his attorney's fees from his sister for initiating and conducting the litigation in bad faith. The trial court denied the motion "in one sentence in an order which contained no findings of fact, conclusions of law or other explanation" (as we expressed it in reviewing the appeal).[46]

We observed that in his post-trial motion, the brother had "made an apparently strong showing that [his sister had] litigated against him in bad faith," and that she "did not respond" to the fee motion.[47] We then remanded the case "so that the trial judge may revisit the motion and grant or deny it as he sees fit, with findings and

---

of a colorable action. He then devotes the balance of his brief, as well as the reply brief, to challenging Johnston's procedural maneuvers.

**42.** *Nepera Chemical, Inc. v. Sea–Land Service, Inc.,* 253 U.S.App. D.C. 394, 407, 794 F.2d 688, 701 (1986) (citations omitted).

**43.** *See Synanon Foundation, Inc., supra* note 38, 517 A.2d at 40.

**44.** Earlier in the litigation, in August 2008, Johnston withdrew his claims for emotional distress. On the second day of trial, in July 2009, he withdrew his claim for punitive damages.

**45.** 791 A.2d 46 (D.C.2002) (*Jung I*).

**46.** *Id.* at 51.

**47.** *Id.*

conclusions or other appropriate explanation."[48] We elaborated:

> The lack of an articulated explanation for the denial of sanctions usually is not a matter of concern. In the usual case, the sanctions motion is plainly deficient or the reasons for denying it are otherwise clear from the record, and no explanation is needed for appellate review. There are cases, however, and this is one of them, in which findings of fact are necessary for that purpose.... Without findings of fact, this court cannot determine whether the trial judge, exercising his discretion, denied [the brother's] motion erroneously or for sound reasons.[49]

After the remand, the trial court again denied the requested fees, offering "three reasons" for doing so.[50] In *Jung II*, the appellant argued for reversal, among other grounds, because the trial court had failed "to make formal findings of fact and conclusions of law." This court rejected that argument because the remand order had permitted "findings and conclusions *or other appropriate explanation,*"[51] which we held the trial court had provided. Although this court did not cite Rule 52 or 54 in either opinion, the *Jung* litigation should be understood to say that, keeping in mind the essentials for appellate review, the trial court may not deny a fee motion without "findings and conclusions or other appropriate explanation," unless the motion is deficient on its face or otherwise clearly unsupportable from the record—in which case summary denial will be appropriate.[52]

Several years later, without addressing the *Jung* litigation, we came out differently, affirming denial of attorney's fees for alleged bad faith with limited comment on the merits of the fee motion and little more than a marginal, if not perfunctory, explication of bad faith.[53] In *Georgia Avenue,*[54] the plaintiff-assignee of a tenant association's right of first refusal to purchase a building sued for specific performance. The defendant-owner counterclaimed for damages and attorneys' fees resulting from slander of title and abuse of process. Eventually, the trial court granted summary judgment for the defendant, whereupon the plaintiff moved to vacate the order, submitting written evidence (a settlement company deposit receipt) that it claimed would nullify the basis for that judgment. Orally, the court denied the plaintiff's motion, finding that the receipt lacked veracity for want of a sworn attestation; ordered the plaintiff to pay attorney's fees to the defendant as a sanction for the failure of the plaintiff's counsel to

---

48. *Id.* at 52.

49. *Id.* at 51.

50. *Jung II, supra* note 15, 844 A.2d at 1104.

51. *Id.* at 1109.

52. *Jung I* appears to have taken its analysis from cases applying Super. Ct. Civ. R. 11, which provides for imposition of sanctions, including reasonable attorney's fees, for untruthful, frivolous, harassing, or other improper filings. *See Jung I, supra* note 45, 791 A.2d at 51 & n. 4 (citing *King v. King,* 579 A.2d 659, 666 (D.C.1990); *Ruesch Int'l Monetary Services, Inc. v. Farrington,* 754 A.2d 328, 333 (D.C.2000)). In particular, *Jung I's* requirement of "findings and conclusions or other appropriate explanation" reflects the Rule 11 ruling in *King, supra,* 579 A.2d at 666 (requiring "findings of fact and conclusions of law, *or an equivalent statement of reasons* ") (emphasis added).

53. *See Georgia Avenue, supra* note 14, 954 A.2d at 971 (citing one sentence from *Jung II, supra* note 15, 844 A.2d at 1108, solely for the general proposition that bad faith may be demonstrated "either by filing a frivolous action, or by litigating a properly filed action in a frivolous manner").

54. *Supra* note 14.

appear for a deposition; and denied defendant's motion "for attorneys' fees generally." [55] In ruling on this latter motion, the judge said: "[A]lthough ... the level of handling [of this case] could be severely criticized, the court does not find that there is bad faith based upon the totality of the facts and circumstances." [56] In his later, written order, the court used virtually the same words, adding as a relevant factor "the court's own involvement in this case." [57]

Upon review of this ruling, we emphasized that "the relief sought is exceptional" and that the trial court's exercise of discretion is warranted because of its "first-hand knowledge of the case." [58] We made clear that the bad faith alleged in the fee motion was "deception and 'fraud on the court' " [59] attributable to a representation by the plaintiff which had turned out not to be true. We observed that the trial court, "speaking from the bench," had "noted the difference between poor quality representation and bad faith." [60] That comment, we said, "stated the precise issue regarding attorneys' fees," [61] meaning the court found that belatedly submitting an unverified receipt was bad lawyering but not bad faith. We then found it highly relevant that appellant, after hearing the trial judge base his oral ruling on this "determinative issue," had failed—before the judge entered his written order—to "request a hearing or pursue any other means of proffering evidence to support a conclusion of bad faith." [62] We concluded, without considering Rules 52 or 54, that the trial

court's finding that the action had not been brought in bad faith was not clearly erroneous. We held, accordingly, that the court had not abused its discretion in denying attorney's fees.[63]

To summarize, in *Georgia Avenue* the trial court properly denied the motion, without abusing its discretion, because (1) the court focused on a bad-faith claim directed exclusively at an alleged deception of the court during the litigation; (2) the court announced orally that it could discern the difference between "severely" bad case-handling and bad faith litigation; (3) the court determined that, in applying this distinction, it could not find bad faith given the "totality of the facts and circumstances"; and (4) the moving party, in seeking such "exceptional" relief, failed to move for reconsideration to explain at a hearing (or otherwise) why the court's ruling should be vacated and supplanted by a finding of bad faith that justified the requested fee award.

The question thus becomes: where does the present case fall within the rulings in *Jung I* and *II* and *Georgia Avenue* ? After correctly limiting fee recovery for abuse of process to the jury's damage award, the trial judge concluded that Johnston's "litigation of the rest of the case"—the assault and battery action—"did not rise to the level of bad faith." [64] He did not make more specific findings, but, as the trial judge, he not only was privy to all behavior before the court in this litigation

55. *Georgia Avenue, supra* note 14, 954 A.2d at 971.

56. *Id.*

57. *Id.* at 972.

58. *Id.* at 971.

59. *Id.* at 972.

60. *Id.* at 971–72.

61. *Id.* at 972.

62. *Id.*

63. *Id.*

64. See *supra* note 13.

but also was aware of Judge Turner's recapitulation and ruling in the partition action. As in *Georgia Avenue*, moreover, appellant did not seek an evidentiary hearing to clarify and amplify his argument for bad faith. The trial court's decision on the fee motion, therefore, has much in common with the virtually summary ruling we upheld in *Georgia Avenue*, where the judge had declined to find bad faith based merely "upon the totality of the facts and circumstances, and the court's own involvement in this case." [65]

But *Georgia Avenue* is not determinative, says Hundley, because the trial court failed to come to grips with the requirements of Rules 54(d)(2)(C) and 52(a),[66] which obligate the court to "specifically address" each of his proffered instances of bad faith. In light of the *Jung* decisions and *Georgia Avenue*, we are not in a position to say that Rules 52 and 54 require formal findings and conclusions before the denial of every fee motion. On the other hand, we see important differences between this case and *Georgia Avenue* that cut in Hundley's favor.

First, in contrast with *Georgia Avenue*, where the fee determination focused on the veracity of a single, unsworn document offered in evidence, Hundley proffered three instances of Johnston's bad faith, pertinent to the assault and battery litigation, each of which involved assessment of circumstances outside the courtroom. It may be true that these three allegations of bad faith are unimpressive on their face; absent further explanation, Johnston's procedural maneuvers at issue—failure to call a promised expert, withdrawal of the punitive damages claim, and failure to undergo a court-ordered medical exam—do not reflect the kinds of wanton, vexatious conduct commonly alleged in support of fee-shifting. Hundley's fee motion, however, clearly explained why these particular maneuvers fit into a much larger pattern of alleged bad faith than Johnston's assault and battery claim. They are not *de minimis*.

Second, the entire universe of bad faith in *Georgia Avenue* was limited to the lawsuit before the trial court, whereas the universe of Johnston's alleged bad faith, in addition to the assault and battery litigation, included his actions in the partition lawsuit and the CPO proceeding at the heart of Hundley's abuse of process claim. While the trial judge had access to a trial exhibit that contained Judge Turner's final disposition of the partition litigation, that exhibit did not give the judge the same intimate acquaintance with Hundley's overall allegations of bad faith that the trial court had in *Georgia Avenue*, scrutinizing personally the one controversial document at issue before him.

Third, although the trial judge was aware of the partition litigation, it is not clear that the judge was aware that Johnston's alleged bad faith relating to that litigation, as well as his alleged bad faith underpinning Hundley's abuse of process counterclaim, was germane *under the law* to the bad faith claimed for Johnston's assault and battery litigation. In other words, it is not clear from the record exactly how the trial judge conceptualized what was relevant to the "rest of the case" for which he denied attorney's fees.

Fourth, whereas this court faulted the defendant in *Georgia Avenue* for failure to seek reconsideration and an evidentiary hearing after the trial court's oral denial of its fee motion, Hundley had no inkling that

---

**65.** *Georgia Avenue, supra* note 14, 954 A.2d at 971; see text accompanying *supra* notes 56 & 57.

**66.** See *supra* note 25.

his motion would be denied until the court's written ruling was issued. Parenthetically, we find it unfortunate that Hundley did not request a hearing on his motion, but we cannot say, in view of the differences between this case and *Georgia Avenue,* that he had an obligation to do so, either to trigger the trial court's responsibility to make findings and conclusions, or to marshal evidence sufficient for our review.

All of which, finally, brings us to Hundley's invocation of Rules 52 and 54. We noted earlier that the *Jung* decisions appeared to rely on Rule 11 case law.[67] Furthermore, *Georgia Avenue* did not rely on any court rule and cited only *Jung II*[68] for analysis of the "findings and conclusions" issue.[69] And, *Jung's* allowance of summary denials of attorney's fee motions under very limited circumstances is inapplicable on the facts here. It is clear, on the other hand, that Super. Ct. Civ. R. 54(d)(2)(C), incorporating Super. Ct. Civ. R. 52(a),[70] applies expressly to motions for attorney's fees, including those brought under the bad faith exception to the American Rule,[71] and thus to the motion before us.

For reasons previously stated, we cannot agree with appellee Johnston that, on this record, the trial judge's summary statement—"litigation of the rest of the case by the Plaintiff did not rise to the level of bad faith"—satisfies the requirement of Rule 52(a) that the court's findings of fact and conclusions of law must "state the controlling factual and legal grounds of

decision," as required by Rule 54(d)(2)(C). The factual universe of alleged bad faith, coupled with the number of instances at issue, requires further explication before the fee question posed by Hundley can be answered with finality. We therefore must remand the case to the trial court for further proceedings consistent with this opinion.

*So ordered.*

---

67.   See *supra* note 52.

68.   *Supra* note 15.

69.   *Georgia Avenue, supra* note 14, 954 A.2d at 972, relied on two other cases for discussion of bad faith issues unrelated to the level of specificity required for findings and conclusions. *See In re Jumper,* 909 A.2d 173 (D.C.

2006) (a Rule 11 case) and *Synanon Foundation, Inc., supra* note 38 (citing no court rules).

70.   See *supra* note 25.

71.   *See Ginsberg, supra* note 16, 963 A.2d at 1137.