*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-CV-0316

BRIAN LOGAN REAL ESTATE, LLC, *et al.*, APPELLANTS,

V.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2020-CA-002912-B)

(Hon. Danya A. Dayson, Trial Judge)

(Submitted October 26, 2023                    Decided March 21, 2024)

*Vanessa Carpenter Lourie*, for appellants.

*Brian L. Schwalb,* Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, *Thais-Lyn Trayer*, Deputy Solicitor General, and *Eric Levine*, Assistant Attorney General, were on the brief for appellee.

Before EASTERLY and DEAHL, *Associate Judges*, and FISHER, *Senior Judge*.

DEAHL, *Associate Judge*: The District of Columbia sued Brian Logan and Brian Logan Real Estate for discriminating against holders of section 8 housing vouchers. The suit stemmed from a rental property listing that expressly stated, "no

vouchers." Logan answered the complaint, admitting that he posted the advertisement but explaining that the qualification was not discriminatory, and instead accurately reflected that the rental was not in fact eligible for vouchers. The property's owners—a diplomat and his wife—had not been accepted into the voucher program because one of them apparently did not have a social security number. After some further proceedings, discovery, and independent investigation by the District, the District moved to voluntarily dismiss its suit.

Logan opposed dismissal and sought attorneys' fees on the basis that the District initiated and maintained its suit in bad faith because it should have known before filing its suit, and at the least some months before moving to dismiss it, that he did not intend to discriminate on the basis of income, i.e., against voucher holders. The Superior Court dismissed the case and denied Logan's request for attorneys' fees, finding that the District neither initiated nor pursued the litigation in bad faith. Logan now appeals. We detect no clear error in the trial court's conclusion that the District did not act in bad faith, and so we affirm the denial of attorneys' fees and the suit's dismissal.

## I. Facts

Brian Logan and Brian Logan Real Estate posted advertisements for a rental property. The advertisements declared, "SORRY, NO VOUCHERS. THIS

PROPERTY IS NOT IN THE PROGRAM." Shortly thereafter, an investigator with the Civil Rights Section of the D.C. Office of the Attorney General called Logan, posing as a potential renter. The investigator and Logan had this exchange:

> Investigator: . . . I'm also part of a voucher program.
>
> Logan: Well, we have a voucher applicant that we've accepted and we're waiting for the DC housing to approve the property but as you know it takes about 45 days for that to happen. So if we get a non-voucher person who wants it sooner we'll take that. . . . If you're a voucher person I've already got one of those . . . we're happy with.
>
> Investigator: Ok. So you're saying someone with a voucher has already applied for this property?
>
> Logan: Yup, and we're in the process of trying to get the property approved and as you know it takes them about 45 days to approve the property by the time they do all their paperwork and inspections.
>
> Investigator: Ok. I have a rapid-rehousing voucher that I'd like to apply to this property.
>
> Logan: Well, I've already accepted one voucher person, so there's no need to have two. I'm only accepting at this point someone who is non-voucher and can take it sooner than later. . . .
>
> Investigator: Ok, ok. So basically because you have someone that's already applied with a voucher . . .
>
> Logan: And we've approved them, they have good credit and they're nice people.
>
> Investigator: So I wouldn't be able to apply for it at this time? Is that what you're saying?

> Logan: That's correct, unless you're a non-voucher person.
>
> Investigator: I see. So you basically are looking for one voucher holder in this property?
>
> Logan: Well that's all it will hold, it's a single family house.
>
> Investigator: Ok. Alright, I appreciate it Brian.

The District's Housing Authority, or DCHA, later informed Logan that the property would not be approved to accept vouchers because one of its owners did not have a social security number. Logan then updated some of the property's advertisements to explain that "[t]he owners are foreign and one does not have a social security number and DCHA will not accept the property into their program." The District was unaware of those updated advertisements when it later brought its suit.

The District filed a complaint against Logan and his company alleging, as relevant here, discriminatory treatment and discriminatory advertising under D.C. Code § 2-1402.21(a)(1), (5). Logan answered the complaint, explaining that the property was simply ineligible to accept housing vouchers, as the DCHA had informed him. Logan nonetheless responded to some of the District's discovery requests on May 21, 2021, providing documentary evidence that the DCHA had not approved the property to accept vouchers. On July 13, 2021, the District responded

with a deficiency letter, detailing omissions in Logan's responses and seeking more information. Logan never replied to the deficiency letter. Less than three months later and after further independent investigation by the District, the District moved to voluntarily dismiss its suit. Logan opposed and sought attorneys' fees on the basis that the District litigated in bad faith.

In considering the motion, the trial court opined that the District had not acted in bad faith when it initiated its suit. The court concluded that the advertisement and phone call with the District's investigator provided a good-faith basis to bring suit. But the court had some doubts about the District's deficiency letter and its maintenance of the suit after Logan had explained that the property was ineligible to accept vouchers, so the court ordered supplemental briefing on that topic. After briefing, the court determined that "[t]he information the District requested" in its deficiency letter "could be characterized" either "as 'mitigating evidence' sought in order to decide whether to exercise its discretion to prosecute," or "as information necessary to assess whether the District could sustain its burden." But "either way," the court concluded, the District did not file the deficiency letter in bad faith. And when Logan failed to reply to the letter, the court reasoned that it was not indicative of bad faith for the District to take a few months to conduct its own investigation before opting to dismiss.

The court thus granted the District's motion to voluntarily dismiss its suit and denied Logan's request for attorneys' fees. Logan now appeals.

## II. Analysis

"A trial court's findings of bad faith are factual and reviewable under the clearly erroneous standard." *Hundley v. Johnston*, 18 A.3d 802, 806 (D.C. 2011). A decision not to award attorneys' fees "will be reversed only for abuse of discretion." *Jung v. Jung*, 844 A.2d 1099, 1108 (D.C. 2004). So "[o]ur review of the trial court's ultimate decision to deny attorneys' fees is confined to a determination of whether the [trial court] failed to consider a relevant factor, whether [it] relied upon an improper factor, and whether the reasons given reasonably support the conclusion." *Hundley*, 18 A.3d at 806.

"In general, parties before the District's courts are responsible for paying the costs and fees that their own attorneys incur during the course of litigation." *Yeh v. Hnath*, 294 A.3d 1081, 1087 (D.C. 2023). That is the "American Rule." *Id.* But the rule has three exceptions: "The prevailing party may recover fees and costs from the losing party if authorized by statute, by contract, or by the court's exercise of equitable power 'when the interests of justice so require.'" *Cathedral Ave. Co-op., Inc. v. Carter*, 947 A.2d 1143, 1159 (D.C. 2008) (quoting *Hall v. Cole,* 412 U.S. 1, 5 (1973)). We have referred to the last exception to the American rule as the "bad-

faith exception." *Yeh*, 294 A.3d at 1089. Logan makes no argument that he is statutorily or contractually entitled to attorneys' fees, and instead contends only that the trial court clearly erred when it concluded that the District did not litigate in bad faith.

The "conduct justifying an award of attorney[s'] fees under the bad faith exception may be found either in the filing of a frivolous claim or in the manner in which a properly filed claim is subsequently litigated." *Hundley*, 18 A.3d at 810. But "the standards for a showing of bad faith" under either scenario "are necessarily stringent, precluding awards for attorneys' fees in the absence of extraordinary circumstances." *Jung*, 844 A.2d at 1108. Because of this strict standard, a finding of bad faith is warranted "only in a limited set of scenarios," to wit:

> [W]here a lawyer knowingly violated the rules of professional conduct, a party committed a fraud upon the court in the course of litigation, a party wantonly failed to comply with a final court order, or a party's claim had no basis whatever in the evidence to support it and was [clearly] brought for coercive purposes.

*Yeh*, 294 A.3d at 1089-90.

Logan's arguments that the trial court clearly erred in concluding that the District did not act in bad faith vary somewhat as between the discriminatory treatment and its discriminatory advertisement claims, so we address those claims in turn.

## A.  Bad Faith as to Discriminatory Treatment

Logan argues that the District initiated its discriminatory treatment claim in bad faith because it knew or should have known before filing its suit that he did not intend to discriminate.  Barring that, he argues that at the very least the trial court erred in concluding that the District did not act in bad faith when it maintained its suit after it was clearly apprised that the property's owners could not accept section 8 vouchers.  The District counters that it had a sufficient factual basis both for initiating and maintaining its suit.[1]  Its argument goes that it initially had reason to think that Logan did intend to discriminate based on the face of the initial advertisement and Logan's subsequent phone call with an investigator, and that it

---

[1] Under the DCHRA, it is "unlawful" to "refuse or fail to initiate or conduct any transaction in real property" either "wholly or partially . . . based on the . . . source of income . . . of any individual."  D.C. Code § 2-1402.21(a)(1).  The statute likewise makes it unlawful "[t]o make, print, or publish . . . any notice, statement, or advertisement, with respect to a transaction, or proposed transaction, in real property" that "indicates or attempts unlawfully to indicate any preference, limitation, or discrimination based on . . . source of income."  *Id.* at § 2-1402.21(5).  And the statute specifically lists "monetary assistance provided to an owner of a housing accommodation under section 8 of the United States Housing Act of 1937" as "a source of income."  *Id.* at § 2-1402.21(e).

did not maliciously protract the litigation once it came to light that Logan in fact could not accept vouchers for the housing.[2]

### 1. Initiation of the suit

The Superior Court did not clearly err in finding that the District did not act in bad faith when it brought its discriminatory treatment claim. Logan stresses that he told the investigator during the phone call that the property had not been approved to accept section 8 vouchers, but the investigator was under no obligation to accept that explanation. Housing providers that discriminate on the basis of income will of course not always openly admit to discriminating, and the face of the advertisement itself and Logan's refusal to accept voucher applicants provided some reason to believe that he was acting in violation of the DCHRA.

---

[2] The District further argues that it had a non-frivolous basis to believe that Logan's intent to discriminate was irrelevant to its discrimination claims, but we doubt that. It is true, as the District points out, that is unclear whether a showing of discriminatory animus is necessary to sustain a discrimination claim under the DCHRA. *See Burrello Grp, LLC v. District of Columbia*, 303 A.3d 618, 625 (D.C. 2023) (citing *Feemster v. BSA Ltd. P'Ship*, 548 F.3d 1063, 1070-71 (D.C. Cir. 2008)). But it is beyond doubt that one cannot act "for a discriminatory reason" against voucher holders if they lack any volitional choice and are simply unable to accept vouchers. D.C. Code § 2-1402.21(a)(1). Neither *Burrello* nor *Feemster* cast doubt upon that self-evident reading of the statute.

Even if the District should have known Logan had a valid and non-discriminatory basis for refusing to accept vouchers, that does not equate to bad faith. "[I]t is not enough for a defendant seeking sanctions from the initiation of an action to establish that a plaintiff's claim was entirely without color when brought." *Yeh*, 294 A.3d at 1090. Rather, a defendant "must also establish by clear and convincing evidence that [the action] was asserted wantonly, for purposes of harassment or delay, or for other improper reasons." *Id.* Thus, we recently reversed an award of attorneys' fees for bad faith even though "moderately diligent research by . . . counsel would have shown that her evidence did not prove the required assertion" because "[b]ad faith must be distinguished from, for example, negligence or professional incompetence." *Id.* at 1081. Logan's assertion that the District should have uncovered his valid basis for refusing to accept vouchers had it only been more diligent amounts to nothing more than that the District acted less than carefully in litigating its claims against him. But imperfect litigation tactics, or even haphazard investigation (assuming for the sake of argument that the District's investigation could fairly be described as such), would not compel a finding of bad faith. Those descriptors are perfectly consistent with the trial court's finding that the District did not act wantonly, maliciously, and in bad faith. They do not render that finding clearly erroneous.

*2. Maintenance of the suit*

While the District's maintenance of the suit is a marginally closer question, the evidence still does not approach compelling a finding as a matter of law that the District acted wantonly in protracting the suit beyond the point where it was clearly non-viable. "A party's bad faith in the maintenance of a colorable action . . . may manifest itself through procedural maneuvers lacking justification or for an improper purpose, such as harassment or delay." *Jung*, 844 A.2d at 1108. Logan stresses that his discovery responses in May 2021 "included documentation that the DCHA had rejected the Property" from the voucher program, and yet the District "continued to pursue the litigation, includ[ing] pressing for the additional discovery[,] claiming deficiencies in the discovery responses that were wholly unrelated to the core issue," and only "mov[ing] to dismiss the case" several months later. We can agree that the District should have more promptly investigated Logan's seemingly valid defense to the discrimination claim and sought to dismiss its suit earlier, but that is where our agreement ends. That alone falls short of compelling a finding of bad faith.

In truth, very little happened in the litigation between when Logan supplied evidence that the property was not eligible for vouchers and when the District, several months later, moved to voluntarily dismiss its suit. And none of what transpired compels a finding of vexatious litigation. It was about two months after

Logan's discovery responses when, on July 13, 2021, the District notified him of some deficiencies in his discovery responses and requested more information, and Logan did not even respond to that request. There do not appear to have been any hearings or substantive motions during the following months. The next thing of any moment that happened in the litigation—setting aside some routine scheduling motions and orders—was the District filing to dismiss its suit. None of that activity compels a finding that the District acted in bad faith, or maliciously dragged Logan through the judicial wringer. It falls short of compelling a finding that the District "committed a fraud upon the court in the course of litigation," or "wantonly failed to comply with a final court order," or acted "for coercive purposes." *Yeh*, 294 A.3d at 1089-90. And a finding of bad faith is not warranted short of that "limited set of scenarios." *See id.*

In short, while we might fault the District for failing to more thoroughly investigate its suit before bringing it, and for letting it linger beyond when more diligent counsel might have dismissed it, its failures on those fronts are not particularly indicative of bad faith litigation tactics. They simply do not establish that the trial court clearly erred when it chalked them up to good faith.

## B. Discriminatory Advertisements

Logan's arguments with respect to the District's discriminatory advertisement claim are unavailing for similar reasons.

### 1. Initiation of the suit

The trial court did not clearly err in concluding that the District filed its discriminatory advertisement claim in good faith. Logan's original advertisement stated: "SORRY, NO VOUCHERS. THIS PROPERTY IS NOT IN THE PROGRAM." This alone provided a non-frivolous basis to believe that Logan had "publish[ed]" a "notice, statement, or advertisement" that indicated "preference" for non-voucher holders. D.C. Code § 2-1402.21(5). Logan counters that his initial advertisements were "quickly modified to contain an explanation for why the Property could not accept applications with government vouchers," and "[t]hose corrected advertisements were published prior to the lawsuits." But even if the District had known that Logan had updated his advertisements when it sued him— and the trial court found it did not—that would not obviate the District's prima facie basis to believe that the initial advertisements violated the statute.

## 2. *Maintenance of the suit*

The Superior Court also did not clearly err in concluding that the District did not act in bad faith when maintaining its discriminatory advertisement claim. In discovery, Logan "admit[ted] that [he] posted the advertisements as alleged." And he claimed that "the advertisements were only posted after the District of Columbia Housing Authority ('DCHA') informed the defendants that an application that had been submitted for approval could not be accepted because one of the owners of the property did not have a social security number." But the evidence was to the contrary, as Logan's original advertisements were posted online in November 2019—the District's investigator called him to follow up the following month—and that was before the DCHA had determined in January 2020 that he could not accept vouchers.

More to the point, while Logan provided strong evidence by May 2021 that he did not intend to discriminate, and instead had simply not been approved to accept housing vouchers, we have already explained that the District's moderate delay in seeking to dismiss its suit after that became clear does not compel a finding of bad faith.

## III.

The trial court's judgment is affirmed.

*So ordered.*