Christine CAVE, Appellant,

v.

Daniel SCHEULOV, Appellee.

No. 12–FM–787.

District of Columbia Court of Appeals.

Argued Feb. 21, 2013.

Decided April 11, 2013.

---

Alan B. Soschin, Washington, with whom Charles J. Soschin was on the brief, for appellant.

Daniel Scheulov pro se.

Before BLACKBURNE–RIGSBY and OBERLY, Associate Judges, and FERREN, Senior Judge.

FERREN, Senior Judge:

Appellant Christine Cave challenges the trial court's denial of her request for attorney's fees after a successful petition for a civil protection order (CPO) against her husband, appellee Daniel Scheulov. Cave asserts that the trial court applied the incorrect standard, requiring that she prove the litigation was "oppressive or burdensome" as a "condition precedent to awarding counsel fees." We agree with Cave that no "condition precedent" factors must be resolved in her favor before the court considers all other relevant factors in determining whether to award attorney's fees in a CPO proceeding. Because the trial court imposed such a threshold condition, we reverse and remand for further consideration of the claimed fee award.

## I.

On October 27, 2011, Cave filed a Petition and Affidavit for a CPO[1] against Scheulov, alleging three incidents of physical abuse or assault that had occurred within the past year.[2] At the time of these incidents, Cave and Scheulov had been married for thirteen years, and they have one child together. On the day the petition was filed, the court issued a Temporary Protection Order (TPO) against Scheulov. It was extended twice during the period before trial. At the end of the trial, on December 16, 2011, the court issued the CPO.

On December 20, Cave filed a post-trial Memorandum in Support of Request for Counsel Fee Award. She claimed that she was entitled to fees in the amount of $6,558.75 pursuant to D.C.Code § 16–1005(c)(8).[3] On May 5, 2012, the court issued an order denying Cave's request:

> In deciding whether to award attorney fees, the trial court should consider whether the litigation has been oppressive or burdensome to the party seeking

---

1. D.C.Code § 16–1005(c)(2) (2009 Supp.) provides:

   If, after hearing, the judicial officer finds that there is good cause to believe the respondent has committed or threatened to commit a criminal act against the petitioner . . ., the judicial officer may issue a protection order that: . . . (2) Requires the respondent to stay away from or have no contact with the petitioner and any other protected persons or locations.

2. The petition alleged that the following events had occurred on three different dates. On October 26, 2011, the day before the petition was filed, Scheulov kicked Cave in the shins as the alarm clock went off. Later that night, after Cave had locked the door to their bedroom, Scheulov used an electric drill to attempt to remove the door. He kicked the door in and threw the drill at Cave, shattering the screen of the computer that she had been holding. Earlier that month, Scheulov had

thrown a child's musical mobile at Cave, striking her in the shoulder. The previous November, Scheulov had thrown plates and glasses at Cave in the midst of an argument, hitting the wall behind her head. In addition to these specific incidents, Cave stated that over the past five years, Scheulov had "verbally and emotionally abused [her,] . . . called [her] derogatory names[,] and ha[d] derided [her] since she lost her job."

3. D.C.Code § 16–1005(c)(8) (2009 Supp.) provides:

   If, after hearing, the judicial officer finds that there is good cause to believe the respondent has committed or threatened to commit a criminal offense against the petitioner, . . . the judicial officer may issue a protection order that: . . . (8) Awards costs and attorney fees.

the award. *Steadman v. Steadman,* 514 A.2d 1196, 1200 (D.C.1986). The Court should also consider the motivation and behavior of the litigating parties. *Id.* These factors combined will allow the trial court to determine whether any award shall be made. *Id.*

\*   \*   \*   \*   \*   \*

The Court disagrees with Petitioner's assertion that the Court is not required to find that Respondent engaged in oppressive or burdensome litigation to enter an award of attorney fees. Irrespective of the important policy consideration that an award of attorney fees assists domestic violence victims, Petitioner's request can be founded only upon a finding of bad faith, as this case does not involve a contractual obligation or statutory mandate. *See Hundley v. Johnston,* 18 A.3d 802, 806 (D.C.2011).

Cave argues that the trial court erred by requiring a showing that the litigation was oppressive or burdensome as a prerequisite to receiving an award of attorney's fees after her successful petition for a CPO.

## II.

■ Our review of a trial court ruling on a motion for attorney's fees is limited "because disposition of such motions is firmly committed to the informed discretion of the trial court." [4] An appellant must make a "very strong showing of abuse of discretion" to convince this court to set aside the trial court's decision.[5]

## A.

■ In the District of Columbia, as a general rule, each party is required to pay its own costs of litigation.[6] A court, nonetheless, may grant a request for attorney's fees from the other party when authorized by "statutory authority" or "contractual agreement" [7] or by several common law exceptions, including the common fund doctrine,[8] the bad faith exception,[9] and, more recently, the necessity "to protect the interests of the children." [10] In this case, a statute provides the exception;

---

4. *Murphy v. Okeke,* 951 A.2d 783, 791 (D.C. 2008) (quoting *Steadman v. Steadman,* 514 A.2d 1196, 1200 (D.C.1986)).

5. *Steadman,* 514 A.2d at 1200.

6. *Hundley v. Johnston,* 18 A.3d 802, 805–06 (D.C.2011) ("The responsibility for paying attorney's fees stemming from litigation, in virtually every jurisdiction, is guided by the settled general principle that each party will pay its respective fees for legal services."); *Steadman,* 514 A.2d at 1200 n. 4 ("Parties to litigation usually pay their own costs and attorneys' fees.") (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 260, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)).

7. *Hundley,* 18 A.3d at 806.

8. The common fund doctrine allows a prevailing party who, for instance, "preserves or recovers a fund or property for the benefit of others," to collect attorney's fees. *McClintic v. McClintic,* 39 A.3d 1274, 1277 (D.C.2012) (quoting *Peart v. District of Columbia Hous. Auth.,* 972 A.2d 810,.818 (D.C.2009)).

9. The bad faith exception "permits an award of attorneys' fees against a party who has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons' connected to the litigation." *Synanon Found., Inc. v. Bernstein,* 517 A.2d 28, 36 (D.C.1986) (quoting *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765–66, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)); *accord Ginsberg v. Granados,* 963 A.2d 1134, 1141 (D.C.2009) (affirming award of attorneys' fees and inferring bad faith from appellant's completely frivolous complaint).

10. *Assidon v. Abboushi,* 16 A.3d 939, 942 (D.C.2011) ("[A]uthorizing trial courts 'to grant attorney's fees where the court finds that counsel was necessary to protect the interests of the children.' " (quoting *Prost v. Greene,* 675 A.2d 471, 474 (D.C.1996))).

D.C.Code § 16–1005(c)(8) authorizes court awards of attorney's fees in CPO proceedings.[11] It seems most appropriate, therefore, that for interpretation of this statute we turn to our case law under the statutes governing domestic relations actions.

Years ago, in ruling on motions for attorney's fees in divorce actions, this court announced a two-step inquiry: (1) "whether to award a fee" and, if so, (2) "the amount of the fee."[12] As to the first, we said, "it is proper for the court to consider whether the litigation has been oppressive or burdensome to the party seeking the award," as well as the "motivation and behavior" of the parties.[13] Second, "[i]n setting the amount, among the factors the court should consider are the quality and nature of the services performed, the necessity for the services, the results obtained from the services, and the financial ability of the spouse being ordered to pay."[14] We had separated these two analyses out of a concern that, to permit the first-step factors to influence the amount of the fee would "create[ ] the very real risk of turning an award of attorney's fees into punitive damages."[15]

Not long ago, in *Murphy v. Okeke*,[16] we confirmed that counsel fees are awardable in CPO proceedings. After quoting the trial court's employment of the two-step inquiry, determining whether "an award is appropriate" and then "the amount of the award," we acknowledged that the court had "[laid] out the proper standard."[17]

We concluded, however, that the court had construed its requirements too narrowly and remanded for consideration of the proper factors the court should consider. More specifically, the trial court had issued "cross (or mutual)" CPOs against the appellant and her ex-boyfriend, but we reversed as to appellant.[18] The court had declined to award attorney's fees to either party, at least in part because each had been "litigating senselessly," and also, as to appellant, because "she did not achieve in this case ... any more than was achieved in the criminal case" (her boyfriend was convicted of simple assault for the abuse directed at appellant).[19] In remanding for reconsideration of the attorney's fees requested by appellant, we advised the court that while " 'results obtained' is a proper factor for consideration," the result in the criminal case (appellee's assault conviction) was irrelevant to a fee request in the civil CPO proceeding.[20]

■ It is important to note, therefore, that in ruling the criminal conviction irrelevant, this court, in *Murphy*, acknowledged for the first time that the "results obtained" in the CPO proceeding itself comprise "a proper factor for consideration."[21] In doing so, we elevated to the first-step inquiry ("whether to award a fee") a factor from the traditional second-step inquiry ("amount of the fee")—a fac-

---

11. See *supra* note 3.

12. *Steadman v. Steadman*, 514 A.2d 1196, 1200 (D.C.1986) (citing *Rachal v. Rachal*, 489 A.2d 476, 478 (D.C.1985)).

13. *Id.*

14. *Id.* (citing *Ritz v. Ritz*, 197 A.2d 155, 157 (D.C.1964)).

15. *Rachal*, 489 A.2d at 478.

16. 951 A.2d 783 (D.C.2008).

17. *Id.* at 792.

18. *Id.* at 785.

19. *Id.* at 792.

20. *Id.*

21. *Id.*

tor that now serves double duty but does not materially change the two-step inquiry.

■ Finally, of considerable significance in considering the fee request, we added that the court

> should take into account the important policy consideration that awarding counsel fees helps domestic violence victims to overcome the financial barrier of high legal costs and to assert their right to bring action against their aggressors. Otherwise, some victims might be dissuaded or prevented from filing a CPO petition.[22]

## B.

■ We have not always rigorously applied the longstanding two-step inquiry,[23] but in light of the sound policy reason announced in *Rachal*,[24] as well as the longevity of that policy,[25] we reaffirm that approach here, allowing (as in *Murphy*) for additions of factors to either step, as appropriate. In this case, in the first paragraph of the trial court's ruling quoted above in Part I, the court laid out the two-step inquiry, following *Steadman*. But in the second paragraph the court revealed its understanding not only that the *Steadman* line of cases required a first-step finding of "oppressive or burdensome litigation to enter an award of attorney fees," but also that appellant Cave's request could "be founded only upon a finding of bad faith," citing *Hundley*.[26] Neither proposition is correct.

In the first place, the trial court appears to have excluded the "motivation and behavior" factor—a factor on par with "oppressive or burdensome litigation" in the very case (*Steadman*) on which the court was relying. More significantly, in *Murphy*, on which the trial court also was relying, we had recognized two additional factors—"results obtained" and CPO statutory "policy"—for consideration in determining whether an attorney's fee should be awarded. It may be true that, in some—perhaps most—CPO cases, a judge would be reluctant to award attorney's fees against the losing party in the absence of "burdensome or oppressive litigation" defending the CPO complaint. But given the statutory policy creating incentives for victims of domestic violence to seek CPOs for their protection, we cannot say—and *Murphy* certainly did not say—that a finding of "burdensome or oppressive litigation" is a condition precedent to an award of attorney's fees in a CPO proceeding.[27] Based on the policy underlying the CPO statute, there may be instances in which the prospect of attorney's fees may be essential to enable a victim of domestic violence to bring and conduct the case—a rationale that is available, for example, under certain circumstances during the

22. *Id.*

23. *See Assidon v. Abboushi*, 16 A.3d 939, 943 (D.C.2011) (collapsing factors into one inquiry).

24. See *supra* text accompanying note 15.

25. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971) (adopting "the rule that no division of this court will overrule a prior decision of this court ..., and that such result can only be accomplished by this court en banc").

26. *Hundley v. Johnston*, 18 A.3d 802 (D.C. 2011).

27. In reading *Murphy*, the trial court appears to have understood our reference to the "proper standard" employed by the trial court in that case, 951 A.2d at 792, as a reference limiting the criteria for a fee award to litigation that is "burdensome or oppressive." To the contrary, we were referring to the two-step inquiry, as evidenced by our recognition of additional criteria for fee awards in CPO cases.

pendency of a divorce proceeding.[28]

■ Finally, in rejecting Cave's application for attorney's fees, the trial court, as quoted earlier, conflated "oppressive or burdensome litigation" with "a finding of bad faith." They may be cousins, but they are not the same. For "bad faith" the court cited *Hundley*, a case which we remanded for a proper exercise of discretion on the petition for attorney's fees pursuant to Super Ct. Civ. R. 54(d)(2)(C)[29] by a party who had prevailed on an abuse of process claim. We relied, among other cases, on *Synanon*, in which we noted that the bad faith exception "permits an award of attorneys' fees against a party who has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons' connected to the litigation."[30] More recently, we added that, "[i]n order to demonstrate bad faith as compared to incompetence, it is necessary to show extraordinary conduct which erodes the fairness of the judicial process."[31] Moreover, "[b]ecause 'the bad faith exception is intended to punish those who have abused the judicial process and to deter those who would do so in the future,' such fees are 'proper only in the presence of extraordinary circumstances or when the dominating reasons of fairness so demand.'"[32] Whatever is meant by "oppressive or burdensome litigation"—a characterization we do not pause to define—it does not call to mind the higher level of "vexatious" conduct found only in "extraordinary circumstances" that justify the bad faith exception to the American Rule. This is not to say that such conduct could not justify a fee award in domestic relations litigation; it is to say, rather, that the common law jurisprudence generated by the bad faith exception is not to be incorporated as the guiding light for defining "oppressive or burdensome litigation" in a CPO proceeding and other domestic relations disputes providing for statutory awards of attorney's fees.

## III.

Because the trial court too narrowly circumscribed the criteria for awarding attorney's fees in this CPO proceeding, we must reverse and remand the case for reconsideration of the claimed fees in further proceedings consistent with this opinion.

*So ordered.*

28. *See McClintic v. McClintic*, 39 A.3d 1274, 1279 (D.C.2012) ("[D.C.Code] § 16–911 [(a)(1)] is designed to ensure that a party in a divorce action not be hindered unfairly in maintaining the action by unequal burdens between spouses." (quoting *Tydings v. Tydings*, 567 A.2d 886, 890 (D.C.1989))).

29. "On request of a party or class member, the Court shall afford an opportunity for adversary submissions with respect to the motion in accordance with Rule 43(e). The Court may determine issues of liability for fees before receiving submissions bearing on issues of evaluation of services for which liability is imposed by the Court. The Court shall find the facts and state its conclusions of law as provided in Rule 52(a), and a judgment shall be set forth in a separate document as provided in Rule 58." Super. Ct. Civ. R. 54(d)(2)(C).

30. *See Synanon Found., Inc. v. Bernstein*, 517 A.2d 28, 36 (D.C.1986).

31. *6921 Georgia Ave., N.W., Ltd. P'ship v. Universal Cmty. Dev., LLC*, 954 A.2d 967, 972 (D.C.2008) (citations omitted) (applying common law "bad faith" exception to American Rule on attorney's fees).

32. *McClintic*, 39 A.3d at 1278 (quoting *Synanon*, 517 A.2d at 37).